941 PARK AVENUE CORPORATION, Landlord, Appellant, *v.* ALBERT FRIED, Tenant, Respondent.

Supreme Court, Appellate Term, First Department, June 15, 1933.

*Reuben Tally* [*Isaac M. Barnett* and *Roy Plaut* of counsel], for the appellant.

*Curtin & Glynn* [*Leo K. Hartus* of counsel], for the respondent.

FRANKENTHALER, J. Summary proceeding for non-payment of $2,500 rent for February and March, 1933, of pent house apartment. Defense, that the pent house was erected in violation of law; that no certificate of compliance was issued, and eviction.

Defendant, a prosperous broker in 1928, hired this apartment for

five years at an annual rental of $15,000, with the privilege of renewing the term for an additional five years. Evidently he was so pleased with the apartment that in 1929, about a year after the beginning of the term, he exercised the privilege of renewal, thus insuring a ten-year lease. The pent house was a duplex apartment with an additional floor above. He employed his own architect and spent about $27,000 in laying out the apartment. As a result, the third or top floor, under the tank, was fitted up as a play room and a botanical garden, with fountains and " bubblers," trees and flowers.

After occupying the apartment without complaint for over four years he defaulted in the payment of the February and March, 1933, rent. On examination by his counsel he was permitted to testify that he suffered financial reverses in the last year, that he lost all his money, and if the people he owed money to demanded their money now he would have to sell his seat on the exchange and go out penniless.

In December, 1932, he asked the landlord for a reduction of rent, and the landlord referring him to its attorney the tenant consulted an attorney of his own and spoke to an architect, and thereafter violations were filed against the pent house; some one telephoned the department and after an inspector visited the premises the violations were filed January 26, 1933.

The violations are that alterations — apparently work done by the tenant and included in the expenditure of $27,000 under the advice of his architect — were made without the approval of the tenement house department; that an arch opening was inclosed with a door; and that seven arches had been closed with pulley-hung windows. The violations refer only to the top floor of the pent house, or what is referred to as the thirteenth room of the apartment; they have no application to any other part of the demised premises.

Upon the filing of appropriate plans by the landlord the violations were removed March 18, 1933.

The tenant complained that under the ruling of the department he could not use the thirteenth room as a bedroom, that in the summer time he used to have a cot on that floor and sleep there, but as there are not two means of egress and ingress use of the room as a sleeping room would be a violation of the law, and accordingly there has been a partial eviction of the tenant. The room, however, was not designed as a sleeping room; there are sleeping rooms and living rooms on the other floors of the apartment, and as a result of the removal of the violations there are two means of egress.

In the absence of statute or ordinance, or a partial eviction, a

tenant cannot occupy an apartment without paying the stipulated rental. If a building be occupied in whole or part without the certificate of compliance provided for in section 301 of the Multiple Dwelling Law, the result, under subdivision 1 of section 302, is unlawful occupation for which no rent can be exacted either by way of action or summary proceeding, and by subdivision 2 of the last section it is provided that "if any dwelling or any part thereof is hereafter occupied by more families or persons than permitted in this chapter, or is erected, altered or occupied contrary to law, such dwelling shall be deemed an unlawful structure, and the department charged with the enforcement of this chapter may cause such building or the part to be vacated." In the case before us a certificate of occupancy was duly issued; the landlord's building was not an unlawful structure; and it seems clear that a mere alteration in such premises, made without the requisite permission, would not under the provisions of the Multiple Dwelling Law be a defense to a tenant remaining in possession against the landlord's demand for rent. And the fact that the thirteenth room in the pent house may not be used as a sleeping room, there being sleeping and living rooms on other floors of the apartment, and no violation existing in that regard, does not constitute an eviction, partial or otherwise. (*Mulligan* v. *Fioravera*, 228 App. Div. 270; affd., 255 N. Y. 539; *Manhattan Square Beresford, Inc.*, v. *Markin*, 146 Misc. 117; *Central Park Plaza Corp.* v. *Monsky*, 145 id. 688.)

The provisions of chapter 871 of the Laws of 1930, passed after the enactment of the Multiple Dwelling Law, seem confirmatory of the above conclusion. That statute creates what may be called a statutory as distinguished from a common-law constructive eviction. At common law there can be no constructive eviction in the absence of abandonment of possession; but the act referred to, applicable to property occupied for dwelling purposes in the city of New York, provides that upon proof that a notice or order to remove or cease a nuisance or a violation or to make necessary and proper repairs, has been "made" by the tenement house department, or any other department having jurisdiction, and the condition is such as, in the opinion of the court, "to constructively evict the tenant from a portion of the premises occupied by him," the court may stay summary proceedings for non-payment cf. rent, or any action for rent or rental value of the premises or any part thereof. If the condition against which the notice is directed was caused by the willful or negligent act of the tenant or his agent, no stay is authorized. Upon proof that the notice or order has been complied with, the act provides for an order vacating the stay upon notice to the tenant or defendant or his attorney. Pro-

vision is further made for payment of rent into court as a condition to the granting of the stay; also that neither party is entitled to costs where a stay is granted, except that in the discretion of the court, if the condition has been caused by the tenant or defendant, costs, not to exceed twenty-five dollars, may be awarded against him. (Keogh Landl. & Ten. Summary Proceedings, 268, 505.) So that even under this statute, which seems supplementary to section 302, subdivision 1, of the Multiple Dwelling Law, the existence of a violation is not a defense to a tenant in possession; at most it would amount to a statutory eviction staying proceedings on the part of the landlord to enforce the collection of rent, to be paid into court pending compliance with the orders of the department.

It follows that the landlord's motion for the direction of a verdict should have been granted.

Final order and order reversed, with thirty dollars costs, and final order and judgment directed for the landlord in the sum of $2,500, with interest and costs.

All concur; present, LYDON, CALLAHAN and FRANKENTHALER, JJ.