Beatrice Shainswit, J.
These two summary nonpayment proceedings were tried jointly, by consent of all parties, and this opinion applies to both.
I find for landlord in each proceeding.
*648 Both tenants are musicians, who have occupied their two-room studio apartments, in the basement of the large, choice apartment house on 72nd Street and West End Avenue, since 1964 and 1967 at monthly rents of $85 and $100, respectively. However, neither has paid any rent since February, 1971, relying on the fact that occupancy of their basement apartments is illegal.
Tenants have urged that they can remain in possession forever, without paying any rent at all, and that no one — neither the landlord, the Rent Commissioner, nor the courts — can alter this state of affairs.
On the facts and on the law, the court rejects the tenants’ posture. Turning first to the facts:
These apartments, along with at least eight others, were created by converting storage rooms in 1949, without meeting legal requirements for such conversion. Concededly, for some years landlord has been seeking to correct this illegality — if for no other reason than that, under the Multiple Dwelling Law, the illegal basement apartments prevent the issuance of a certificate of occupancy for the entire building. Landlord has, in fact; taken all possible steps to remedy the situation. Indeed, a temporary certificate of occupancy was issued by the Department of Buildings on the basis of the plans filed by landlord, since they included all the legally required changes — a basement sprinkler system, fireproofing, new walls, etc. These plans involved drastic structural alterations, necessitating removal of the tenants in occupancy and all of the other basement tenants have long since vacated their apartments.
The two instant tenants, however, have successfully fought eviction. They first blocked landlord from seeking to cure the illegal condition through the simple eviction routes available for decontrolled tenants. Tenants established, in the course of lengthy proceedings, that they were subject to rent control. [Landlord had urged that the leasing to them was for commercial use; tenants answered that their occupancy was residential. Landlord then pointed out that these apartments were created by conversion from nonhousing to housing use; tenants replied that such a conversion did not result in decontrol where a certificate of occupancy was not obtained. Tenants prevailed on both questions.]
Landlord was then at an impasse. It pointed out on the trial herein — and tenants vociferously agreed — that it could not bring Rent Commission eviction proceedings directly based on tenants ’ illegal occupancy. Under a 1970 -ordinance, such proceedings are apparently permitted only if the. Department of *649 Buildings finds the illegal situation to be one of such gravity that it issues a vacate order, or if the violation is initially created by tenant (Administrative Code of City of New York, § Y51-6.0, subd. a, par. [3]). Further, the temporary certificate of occupancy issued by the Department of Buildings, based on landlord’s filing of plans to correct the illegal occupancies, has expired by operation of law, because of landlord’s inability to obtain possession of the two apartments within the statutory time period.
Landlord, thus, cannot obtain a permanent certificate of occupancy for its building— even though all of the other illegal occupancies in the basement have been corrected — solely because of the continued occupancy of these two tenants. Proceedings have even been brought against landlord in Criminal Court, based on the absence of a certificate of occupancy, which it is powerless to obtain as long as these two tenants remain in possession.Yet, despite these indisputable facts, it is on that very failure to obtain a certificate of occupancy that tenants base their determined refusal to pay any rent whatsoever to landlord, relying on section 302 of the Multiple Dwelling Law, which states: “ § 302. Unlawful occupation. 1. a. If any dwelling or structure be occupied in whole or in part for human habitation in violation of section three hundred one, during such unlawful occupation * * * b. No rent shall be recovered by the owner of such premises for said period, and no action or special proceeding shall be maintained therefor, or for possession of said premises for nonpayment of such rent.”
Subdivision 1 of section 301, on which the above section hinges, reads: “ No multiple dwelling shall be occupied in whole or in part until the issuance of a certificate by the department that said dwelling conforms in all respects to the requirements of this-chanter, to the building code and rules and to all other applicable ■ law ”.
The section dealins with illegal basements, not mentioned in section 302, is subdivision 5 of section 300, which says: “No room in a cellar or basement shall be occupied for living purposes unless the department shall issue a written permit for such occupancy after all the applicable provisions of law have been. complied with.”
Tenants’ contention — that the above sections of the Multiple Dwelling Law warrant their refusal to pay rent for the past year and a half, and for as long into the future as a certificate of occupancy is out of landlord’s reach — is taken in the teeth of a directly contrary ruling by the Rent Administrator, dated *650 July 11,1972. Tenants, in effect, hold this ruling to he a nullity, despite the fact that they remain in possession solely because of their rent controlled status, and despite the further fact that they initiated the proceedings which led to the rent office order.
Tenants had complained of nonregistration of their apartr ments; the District Bent Director had found, as we have seen, that the apartments were subject to control and should have been registered. He had gone beyond this, however, in an order issued on June 30,1971, and had cut the rents to $1 each. Landlord promptly challenged that ruling by article 78 proceedings in the Supreme Court, and the matter was remanded to the Bent Commissioner.
On reconsideration, the Bent Commissioner, in a comprehensive final order, re-established the original rents at the $85 and $100 paid by tenants since they first took occupancy. He agreed that, because of the violations, the apartments had correctly been found subject to control. However, he went on to hold that, where a certificate of occupancy is not obtainable because of circumstances like those present here, the policy of the Administrator is, and has been always, to fix the rent for the illegally occupied apartments at the first rents paid by tenants in occupancy until they vacate, at which time the rents go down to $1 until the illegality is corrected.
The Commissioner made that ruling precisely because of his finding that these two tenants’ illegal occupancy was the sole factor preventing the issuance of a certificate of occupancy for the whole building; that criminal proceedings were pending because of tenants’ occupancy; and that the reduction to $1 a month was helping prevent curing of the violations by encouraging tenants to remain in occupancy. The Commissioner specifically noted landlord’s attorney’s comments that: “ As a result of the District Bent Director’s orders, the tenants have occupied the subject premises since June 30, 1971, at the established renta:! of $1.00 per month, and are quite happy and prepared to so occupy them indefinitely under these conditions, regardless of whether or not their occupancy is creating an illegal status for the entire building. ” .
Landlord, of course, bases its summary nonpayment proceeding on the rent set in this order. Tenants, however, who have for years fought landlord in every forum hy insisting on their rent controlled status, now take the position that the Bent Commissioner’s order is a nullity, although they apparently have not challenged that order by article 78 proceeding in the Supreme Court. They insist that this court must ignore the order, recon *651 sider the entire issue of illegality under section 302, and achieve for tenants the free rent status — preventing correction of the illegality — that the Rent Commissioner specifically sought to end.
This court finds, first of all, that the rent office order is controlling. As the Appellate Term for this Department said just a few weeks ago (746 Realty Corp. v. Stevens, N. Y. L. J., Aug. 30,1972, p. 2, col. 1): “ The order of the City Rent and Rehabilitation Administration may not be attacked collaterally; its orders are binding in a summary proceeding (Jadam Associates, Inc. v. Latimer, N. Y. L. J., Dec. 31, 1969, leave to appeal denied by App. Div., N. Y. L. J., March 20, 1970; Ament v. Cohen, 16 A D 2d 824; Bishop v. 339 Lexington Ave. Corp., 40 Misc 2d 769, affd. 43 Misc 2d 692).”
The State Legislature has provided a means of reviewing rent office orders — by article 78 proceeding in the Supreme Court. Landlord followed that method in this very case, and the Supreme Court order of remand, together with the resulting rent office order, is fully binding on this court. Tenants have exactly the same recourse; if they choose not to exercise it, the impact of the illegal occupancy on this renting has been settled, and is res judicata.
Even if this were not so, however, and this issue was entirely open for me on de novo review, I nevertheless reach precisely the same result as the rent office did. In this connection I note that I permitted a record to be made as if the issue were open, so that appropriate findings could be had — in the hope of excluding the possibility of still further legal proceedings by tenants hinged to this subject. On the basis of that record, and after the most careful study of sections 300 to 303 of the Multiple Dwelling Law, I conclude that nothing in that statute sanctions tenants’ position.
Specifically, I find nowhere in section 302 any support for the charade in which tenants seek to enlist the court as accessory. The object of that section —as of the entire statute — was to obtain high quality dwellings throughout this city, meeting statutory standards. Tenants — and tenants alone — stand in the way of landlord’s protracted battle to meet those standards, and comply with the statute. Indeed, by dint of tenants’ actions in blocking a certificate of occupancy for the entire building, the l.ogic of tenants’ position under section 302 would seem to bar the collection of rent for any apartment in the building.
No such.absurd result is demanded by the law. The sanctions imposed by section 302 presuppose a certificate of occupancy *652 denied because of volitional illegality. They were designed as a tool to stimulate the conversion of unsafe and substandard dwellings into proper and legal ones. Where tenants themselves have prevented the carrying out of the legislative objective, it flies in the face, not only of common sense, but of every maxim of statutory construction, that tenants should be allowed to profit from their own actions.
It has long been the rule that the courts will not adhere even to the apparent letter of a statute, where doing so would defeat the manifest purpose of that statute, particularly where such a construction would work either injustice or an absurdity.
The United States Supreme Court long ago said (Holy Trinity Church v. United States, 143 U. S. 457, 459 [1892]): “It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers. This has been often asserted, and the reports are full of cases illustrating its application. This is not the substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act.”
That doctrine is reiterated in the most recent rulings of our Court of Appeals, such as the statement in Williams v. Williams (23 N Y 2d 592, 599 [1969]): “ We will not blindly apply the words of a statute to arrive at an unreasonable or absurd result. If the statute is so broadly drawn as to include the case before the court, yet reason and statutory purpose show it was obviously not intended to include that case, the court is justified in making an exception through implication. (Matter of Meyer, 209 N. Y. 386; Holy Trinity Church v. United States, 143 U. S. 457; cf. Booth v. Curtis Pub. Co., 15 A D 2d 343, affd. 11 N Y 2d 907; see, also, Crawford, The Construction of Statutes, § 177 [1940].) ” (See, also, Matter of Chatlos v. McGoldrick, 302 N. Y. 380, 388 [1951]; Matter of Martinez v. Ficano, 28 A D 2d 215, 218 [3d Dept., 1967].)
In this situation, to allow tenants to capitalize on their own aggressive interference with landlord’s bona fide attempt to extricate itself from its unfortunate situation, would be more than unfair. It would impart to the Legislature an intent to *653 encourage such mischief, an intent which is nowhere to he found in the statute.
On the contrary, section 302 deals solely with the absence of an objective document — a certificate of occupancy. It is keyed to section 301, the provision requiring a certificate of occupancy, not to section 300, the one setting up minimal requirements for basement apartments.
"What the Legislature was seeking to do was, not to permanently bar the use of basements, but to permit their addition to the housing stock if legal requirements were found by the Department of Buildings to be met and a certificate of occupancy issued. Thus, again, where it is the tenant who is preventing that issuance of a certificate of occupancy, it would be the height of fantasy to permit him to block the legislative purpose still further by continuing on indefinitely in rent-free possession.
This obvious and reasonable construction of the statute was the one found by the Rent Commissioner. Its holding — that the rents would drop to $1 only when these tenants vacate —recdgnized that the rent withholding sanction was designed to deal with a landlord trying to benefit personally from a blatant illegality. Where landlord is seeking to remedy the situation, and tenant is the one blocking compliance, the statute simply has no application.
In other areas of law — assimilating the landlord-tenant relationship, for example, to the normal law of contracts — it has long been familiar doctrine that, where a condition precedent exists to the enforcement of a claim, and one party prevents performance of that condition, he cannot set up nonperformance as a defense. ‘ ‘ One may not take advantage of a condition precedent, the performance of which he himself has rendered impossible. ’ ’ (Kooleraire Serv. & Installation Corp. v. Board of Educ. of City of N. Y., 28 N Y 2d 101,106 [1971] : see, in general, 7 N. Y. Law of Contracts, §§ 1502, 1603 and 1704, and cases therein cited.)
Tenants here, similarly, have impeded performance of the condition stated in section 302, i.e., obtaining the certificate of occupancy. They cannot be permitted to set up as a defense that very nonperformance for which they are responsible.
To recapitulate: at the threshold, the Rent Commissioner’s order cannot be collaterally assailed in these summary proceedings. Other avenues of redress were available to tenants if they desired erasure or modification of the Commissioner’s order. But they cannot by-pass the statutory procedures regulating judicial review of a rent office order; this court does not sit as a *654 super-Commissioner resolving issues of appropriate rental charges.
Secondly: wholly apart from the controlling impact of the Rent Commissioner’s order, from whatever other perspectives the instant issue is appraised, the conclusion is always the same. Whether we apply the basic canons of construction of statutes, whether we look to the analogs in the substantive law of contracts, or whether we follow the ordinary rules of common sense which are integrated into every issue of statutory construction, the ultimate conclusion is irresistible. Tenants cannot be permitted to take advantage of a failure of compliance for which they themselves are solely responsible. In the only cases directly arising under these sections of the Multifile Dwelling Law, where the parties even attempted to raise an issue of this sort, the Appellate Term for this department made that plain; the rent withholding sanction is not available to tenants who are themselves blocking the issuance of a certificate of occupancy. (Carmel v. Appleton, 127 N. Y. S. 2d 268 [App. Term, 1st Dept., Oct., 1953] and 122 N. Y. S. 2d 195 [App. Term, 1st Dept., April, 1953]; and see 941 Park Ave. Corp. v. Fried, 148 Misc. 137 [App. Term, 1st Dept., 1933].)
The other defenses pleaded in tenants ’ answers, on the record as a whole. I find are demonstrably without merit, and they are therefore dismissed. The relief sought by petitioner landlord, in accordance with the Rent Commissioner’s order, is granted, with a 10-day stay.