OPINION OF THE COURT
Thomas P. Aliotta, J.
In a summary proceeding, respondent Raeanne Rubenstein (hereinafter referred to as respondent) moves, pursuant to Multiple Dwelling Law §§ 301 and 302, to dismiss the petition and for partial summary judgment on her counterclaim seeking recovery of rent paid during the period that there has been no certificate of occupancy for the subject apartment. Petitioner has filed opposing papers and cross-moves, pursuant to CPLR 3211, to dismiss respondent’s defenses set forth in paragraphs "1” through "4” and "6” through "17” of the answer.
The undisputed facts are as follows:
In 1981, Key Manufacturing International, Inc. (hereinafter referred to as the Sponsor) opened an alteration file with the buildings department to convert a commercial warehouse building, 10 Bay Street Landing, to a cooperative apartment.
Pursuant to the plans filed with the buildings department, a certificate of occupancy was issued in 1983 for the first through seventh floors of the building. The eighth and ninth floors of the building were designated as storage/mechanical areas. In February 1984, the Sponsor opened a second alteration file to convert the eighth and ninth floor storage space to class A duplex residential (penthouse) apartments. Pursuant to the plans filed with the buildings department, the Sponsor . was obligated to complete all of the work required under the alteration file, including all improvements necessary to obtain a certificate of occupancy for the building. The Sponsor failed to file required controlled inspection reports including the report relating to firestopping of the penthouse apartments. Consequently, no certificate of occupancy has ever been issued for residential use of the penthouse apartments.
In 1985, respondent purchased shares from the cooperative and contracted a proprietary lease for the possession of the subject penthouse apartment with knowledge that no certificate of occupancy was issued for the apartment.
In 1992, during the replacement and repair of terraces on *905 the eighth floor as well as the removal of part of the eighth floor concrete slab due to severe water leaks in the building, petitioner’s engineering contractor discovered that there existed a deficiency in firestopping underneath the eighth floor and the plumbing shaft area between respondent’s apartment and the apartment adjacent to it. Petitioner’s engineering contractor further discovered that a report issued by an engineer hired by the Sponsor incorrectly stated that firestopping existed in the crawl space below the penthouse demising wall. Prior to this discovery, both parties mistakenly believed that the lack of issuance of the certificate of occupancy of the apartment was not related to the safety or integrity of the premises.
Petitioner asserts that, to date, all areas in the penthouse apartments requiring firestopping have been ascertained and that approximately 95% of the firestopping work required at the building is complete. Petitioner further asserts that its contractor was unable to complete the firestopping work in respondent’s apartment at an earlier date because respondent failed to cooperate with petitioner and its contractors by providing them access to her apartment.
Petitioner seeks maintenance (rent) arrears in the amount of $13,876.83 which includes the balance of $100 owed for September 1993, monthly maintenance owed from October 1992 through April 1993, and legal fees.
Respondent argues that since no certificate of occupancy has ever been issued for her apartment, petitioner is in violation of Multiple Dwelling Law § 301 (1) and the summary proceeding herein should be dismissed and petitioner precluded from recovering rents for the period during which she occupied the apartment and withheld payment of rent, pursuant to Multiple Dwelling Law § 302 (1) (b). Moreover, respondent argues that pursuant to Multiple Dwelling Law § 302 (1) (b), summary judgment should be granted on her counterclaim seeking reimbursement of rent previously paid during the full term of occupancy of the premises since 1985.
Petitioner claims that it is excused from its statutory obligation to obtain a certificate of occupancy because respondent purchased her apartment from the Sponsor and, pursuant to the sales agreement, the Sponsor was contractually obligated to obtain the certificate of occupancy. Any agreement between the Sponsor and the respondent, however, does not relieve petitioner from obligations imposed upon it by the Multiple *906 Dwelling Law. Such a claim is irrelevant to the proceedings herein.
Multiple Dwelling Law § 301 (1) provides in part: "No multiple dwelling shall be occupied in whole or in part until the issuance of a certificate by the department that said dwelling conforms in all respects to the requirements of this chapter.”
Multiple Dwelling Law § 302 (1) (b) provides: "No rent shall be recovered by the owner of such premises for said period, and no action or special proceeding shall be maintained therefor, or for possession of said premises for nonpayment of such rent.”
Respondent argues that Multiple Dwelling Law § 302 should not be strictly construed so as to limit her from using the statute to recover rents voluntarily paid to the landlord during the period the premises had no certificate of occupancy issued for its use. Relying on the dissenting opinion in Goho Equities v Weiss (149 Mise 2d 628) respondent contends that although Multiple Dwelling Law § 302 is penal in nature, it is a remedial statute, beneficial to the public, and should therefore be liberally or equitably construed so as to effect its purpose (McKinney’s Cons Laws of NY, Book 1, Statutes § 275; Matter of State of New York v Strong Oil Co., 105 Misc 2d 803, affd on other grounds 87 AD2d 374; Redlich v Capri Cinema, 43 AD2d 27, 31, lv dismissed 33 NY2d 974).
In order to determine whether a statute which imposes a civil penalty is penal in nature, the court must first determine whether the penalty is imposed for the punishment of a wrong or for the redress of an injury to the individual. (Matter of State of New York v Strong Oil Co., supra, at 820, citing Ward v Bochino, 181 Misc 355, 358, affd 268 App Div 814, rearg and lv denied 268 App Div 887, lv denied 294 NY 675.)
The purpose of the Multiple Dwelling Law is to establish and maintain proper housing standards requiring sufficient light, air, sanitation and protection from fire hazards essential for the benefit of the public welfare. The assurance that residents are provided with safe, sound and approved construction is evidenced by the issuance of a certificate of occupancy. (Washington Sq. Professional Bldg. v Leader, 68 Misc 2d 72 [1971].) Unlike a civil penal statute, which may in some instances only impose a monetary fine for its violation, Multiple Dwelling Law § 302 precludes an owner from recovering rent and maintaining a summary proceeding against a *907 tenant living in a multiple dwelling which lacks a certificate of occupancy. The owner’s preclusion derives solely from the owner’s failure to obtain a certificate of occupancy for the premises and terminates once the certificate is issued. The statute’s conditional provision motivates an owner to expeditiously correct, modify or repair the premises to conform with housing standards prescribed by law, and relieve the tenant from unsafe, substandard living conditions. It is well established that statutes found to benefit the public, though penal as to some persons, will receive equitable construction in order not to defeat a general, as well as specific purpose. (Matter of State of New York v Strong Oil Co., supra, at 820, citing McKinney’s Cons Laws of NY, Book 1, Statutes § 275, at 444; Cotheal v Brouwer, 5 NY 562; People v Abraham, 16 App Div 58.) Multiple Dwelling Law § 302, though traditionally held by courts to be highly penal to owners of multiple dwellings which lack a certificate of occupancy, requiring a strict construction of the statute (Wokal v Sequin, 167 Misc 463 [Mun Ct, Queens County 1938]), in fact advances the purpose of the Multiple Dwelling Law in a remedial fashion and must therefore be equitably construed.
Black’s Law Dictionary (283 [5th ed 1979]) defines "equitable construction” as "[a] construction of a law, rule, or remedy which has regard more to the equities of the particular transaction or state of affairs involved than to the strict application of the rule or remedy; that is, a liberal and extensive construction, as opposed to a literal and restrictive [construction]”. Equitable construction does not exclude a literal application of a statute. Strict application of a rule, in fact, falls within the parameters of equitable construction. It may be applied, however, only after consideration of all of the equities in the matter leads to the conclusion that only a literal reading of the statute will tender the equitable relief sought.
The court’s attention is then drawn to Multiple Dwelling Law § 325 (2), which requires a landlord of a multiple dwelling to register the building with the city, providing information which the city can use to trace the landlord and hold him or her accountable. Multiple Dwelling Law § 325 (2) provides in part that: "no rent shall be recovered by the owner of a multiple dwelling who fails to comply with such registration requirements until he complies with such requirements * * * If a resident of an unregistered dwelling voluntarily pays rent or an installment of rent when he had a right to withhold the *908 same under this subdivision, he shall not thereafter have any claim or cause of action to recover back the rent or installment of rent so paid.”
As civil penalty statutes, remedial in nature, Multiple Dwelling Law §§ 302 and 325 will bar the recovery of rent until the landlord complies with the law. Unlike Multiple Dwelling Law § 302, however, Multiple Dwelling Law § 325 expressly provides that its violation by a landlord will not permit a tenant, who voluntarily pays rent during the time that the landlord has not registered, to recover the back rent voluntarily paid. Respondent argues that the court should infer that a tenant’s right to recover back rent voluntarily paid be extrapolated from Multiple Dwelling Law § 302, based upon the expressed prohibitive language in Multiple Dwelling Law § 325 and the absence of such language in Multiple Dwelling Law § 302. Respondent further argues that drawing such an inference in this case is a matter of legislative design and not mere legislative oversight. The argument does not, however, account for other material factors differentiating Multiple Dwelling Law § 302 from Multiple Dwelling Law §325.
Violation of Multiple Dwelling Law § 325 derives solely from an owner’s failure to register the building as a multiple dwelling. The circumstances giving rise to a landlord’s violation of Multiple Dwelling Law § 302, however, vary in complexity. In some instances, a tenant’s conduct may contribute to or prevent an owner from obtaining a certificate of occupancy. (Chatsworth 72nd St. Corp. v Rigai, 71 Misc 2d 647, affd 74 Misc 2d 298, affd 43 AD2d 685 [1973].) In other instances, the cause of the owner’s failure to obtain a certificate of occupancy is not based upon a condition that endangers the health or safety of the tenant. (Renaissance I Assocs. v Alexander, 21 HCR 131A [1993].) In these cases, courts have abandoned a literal application of Multiple Dwelling Law § 302 in favor of allowing equity to control in order to avoid a tenant’s unjust enrichment.
Comparing the language of Multiple Dwelling Law § 302 with Multiple Dwelling Law § 325 alone, without considering additional factors which materially effect an equitable construction of Multiple Dwelling Law § 302, is an insufficient basis upon which the court may infer a right to a tenant not expressed in the statute.
Both parties entered the lease agreement under the mutual *909 mistake that the apartment’s lack of a certificate of occupancy was caused by something other than the need to correct a safety or health problem. The mistake continued through the period of time between respondent’s execution of the proprietary lease and the discovery of the firestopping deficiency. Neither side should profit from this mutual mistake jointly perceived and acted upon. (De Wolf v Howe, 112 App Div 104 [1906].) Consequently, respondent is precluded from attempting to recover rent voluntarily paid during this time period.
Had there been no mistake between the parties as to the safety and health status of the apartment and had it been known at the time of the lease agreement that issuance of the certificate of occupancy was being delayed until the firestopping deficiency was corrected, respondent would still be precluded from recovery of rent voluntarily paid during this period. It follows that respondent be precluded from recovery of rent paid during the period of time subsequent to the discovery of the dangerous condition in the apartment and prior to respondent withholding rent.
A cooperative is a nonprofit corporation designed to allow common ownership of property. The occupants own stock in the cooperative and, as owners, are responsible for managing and operating the residential apartments. (Northridge Coop. Section No. 1 v 32nd Ave. Constr. Corp., 207 Misc 164, mod on other grounds 286 App Div 422, affd 2 NY2d 514 [1957].) Access to nonpayment summary proceedings has been made available to cooperatives as a means to recover rent or maintenance arrears from the stockholder. For the purpose of maintaining a summary proceeding, the cooperative is treated as the landlord, and its stockholder as the tenant. (Jimerson Hous. Co. v Butler, 102 Misc 2d 423 [1979].)
In this type of summary proceeding, however, the rationale of the Multiple Dwelling Law imposing an obligation upon the landlord to secure a certificate of occupancy for the premises and not holding a tenant responsible for such duty, weakens when a stockholder/tenant seeks to recover rents previously paid during the time the premises lacks a certificate of occupancy. Although respondent is not responsible for securing a certificate of occupancy for the apartment, she shares a common interest with the cooperative to the extent that, as a shareholder, she may not over aggressively take action that conflicts with that interest. By using Multiple Dwelling Law § 302 as a vehicle to recover rent voluntarily paid for the full period of time that the apartment lacked a certificate of *910 occupancy, respondent pressures the cooperative to correct the existing dangerous condition in a manner not contemplated by the Legislature and which defeats the manifest purpose of the statute. Respondent’s attempt to recover eight years’ back rent paid from the time she purchased the shares not only places an unnecessary burden upon petitioner, but may cripple the cooperative or threaten its viability to the detriment of all shareholders including respondent herself. Equitable construction of Multiple Dwelling Law § 302, in summary proceedings involving cooperative/landlords and stockholder/tenants in this instance, therefore, warrants a literal application of the statute.
Respondent’s motion for partial summary judgment on her counterclaim seeking recovery of back rent paid during the period that there has been no certificate of occupancy for the subject apartment pursuant to Multiple Dwelling Law § 302 is denied and the counterclaim dismissed as a matter of law.
In the absence of certain circumstances described earlier, which may excuse a landlord from a strict mechanical reading of Multiple Dwelling Law § 302 to avoid a tenant’s unjust enrichment, equitable construction of the statute’s rent forfeiture penalties generally requires a literal application of the statute. Petitioner argues that use of Multiple Dwelling Law § 302 as a defense in this proceeding is an attempt by respondent to reduce the number of shares allocated to her apartment and reduce maintenance charges, and that it has substantially completed the necessary repairs needed to obtain a certificate of occupancy. Under an equitable construction, however, these arguments do not describe circumstances which would allow petitioner to avoid a literal application of the statute.
A tenant, who asserts a Multiple Dwelling Law § 302 defense to a nonpayment proceeding but whose actions prevent a landlord from correcting a dangerous condition is barred from raising such a defense, however. Multiple Dwelling Law § 302’s sanctions are intended to be used by a tenant as a shield to protect against unsafe living conditions and not as a sword providing the tenant with an opportunity for unjust enrichment. (Chatsworth 72nd St. Corp. v Rigai, 71 Misc 2d 647, affd 74 Misc 2d 298, affd 43 AD2d 685, supra.) Respondent’s motion to dismiss the petition on the ground that the landlord, pursuant to Multiple Dwelling Law § 302, is barred from recovering rent withheld, is accordingly denied to the extent that petitioner’s claim that respondent failed to give *911 access to the apartment to petitioner for purposes of rectifying the dangerous condition raises an issue of fact to be determined at trial.
Petitioner’s motion to dismiss respondent’s defenses set forth in paragraphs "1” through "4” of the answer is granted.
Petitioner’s motion to dismiss respondent’s defenses set forth in paragraphs "6” through "17” of the answer is denied.
Petitioner’s application for discovery is also denied.