*451 OPINION OF THE COURT
Douglas E. Hoffman, J.
The issue presented in this nonpayment proceeding is whether a late Division of Housing and Community Renewal (DHCR) initial registration of an apartment following vacatur by the rent-controlled tenant requires a reduction in the monthly rent to the last amount payable under rent control where the first rent after rent control exceeds $2,000 per month, and the apartment is purportedly exempt from rent regulation. At trial petitioner presented evidence that rent arrears of $61,000 were due and owing through May 2000 (10 months’ rent at $6,000 per month plus air conditioner charges of $100 per month for the same period). Respondents asserted, as a defense, that the subject apartment was not decontrolled upon the vacatur of the prior tenant of record and that petitioner was seeking rent in excess of the legal regulated rent for the subject apartment. After trial, the parties submitted briefs and replies.
Findings
Prior to the occupancy of respondents herein, the tenant of record was rent controlled with a monthly maximum base rent (MBR) and maximum collectible rent (MCR) of $1,889.96. In or about November 1996 the rent-controlled tenant vacated. In January 1997, respondents leased the subject apartment for a term of two years and 14 days terminating on January 31, 1999. The rent was $4,500 per month. In January 1999 respondents renewed the lease for one year at $6,000 per month. The original lease contained a rider, signed by both parties, with the following provision:
“this apartment isn’t subject to rent stabilization
“Pursuant to Section 26-504.2 of the New York City Administrative Code, as amended by Chapter 253 of the Laws of 1993, as further amended by Local Law 4 of 1994, it is specifically understood by the tenant that this apartment is not subject to the Rent Stabilization Law, as amended, on the ground that the apartment was or became vacant on or after April 1, 1994, and had a legal regulated rent of $2,000.00 or more per month.” (Petitioner’s exhibit 5.)
As a basis for establishing a rental amount above the $2,000 per month level as required for high-rent decontrol, petitioner relied on Rent Guidelines Board (RGB) Order No. 28, effective for leases commencing October 1, 1996 through September 30, *452 1997, which states that upon vacancy in a rent-controlled, apartment, a landlord is entitled to raise the rent by 45% above the MCE or 40% above the MBR, whichever is greater. Either increase, according to petitioner, would have raised the rent-controlled rent of $1,889.96 above $2,000 per month, thereby automatically invoking the high-rent vacancy provisions of Rent Stabilization Law of 1969 (Administrative Code) § 26-504.2.
Petitioner states that it filed an initial rent registration (RR-1) with the DHCR in July 1997. Petitioner alleges that its computer mistakenly printed out a registration which indicated that the apartment was both “permanently exempt” due to “high rent vacancy” and “temporarily exempt” due to “owner occupied/employee.” Petitioner filed a second RR-1 on or about October 25, 1999. Petitioner’s exhibit 8 is a letter dated April 13, 2000 from petitioner to DHCR stating that another amended registration was being submitted because of the error in the July 1997 registration and because DHCR, apparently after the October 1999 registration, had mistakenly listed the apartment as “rent-stabilized” in its records. Although the letter references the alleged original registration containing the computer-generated error, the original registration was not part of the exhibit, and none of the exhibits display this dual-registration error. Also referenced in this letter was an amended registration dated April 13, 2000 which was separately introduced into evidence. Respondents presented certified records from DHCR indicating that in 1997 the subject apartment was registered only as “temporarily exempt” due to “owner occupied/employee.” (Respondents’ exhibit B.)
On or about May 19, 1999 respondents commenced an action in New York State Supreme Court to recover alleged rent overcharges. Respondents allege that petitioner failed to serve and file the notice of initial rent registration within 90 days of the commencement of their tenancy as required by law.[1] Respondents state that petitioner served an RR-1 in October 1999 and thereafter served an amended RR-1 in April 2000 as to which respondents intend to file a fair market rent appeal. Respondents acknowledge withholding rent from August 1999 through the date of trial.
*453 Respondents alleged rent overcharge as a defense and counterclaim. However, Honorable Jean Schneider, by order dated May 3, 2000, dismissed the overcharge counterclaim without prejudice to the prior claim in the Supreme Court action commenced by respondents. Judge Schneider preserved the rent overcharge defense.
Discussion
After presenting its prima facie case, petitioner made three arguments with respect to the overcharge defense. First, the apartment is exempt from rent regulation pursuant to former section 26-504.2 of the Administrative Code (amended by L 1993, ch 253, and further amended by Local Laws, 1994, No. 4 of the City of New York)[2] and there can be no overcharge. Second, the factual predicate for the deregulation is based solely on RGB Order No. 28. Third, petitioner registered the apartment and served respondents with the RR-1. The time to challenge the RR-1 has expired. Respondents argue that petitioner can neither raise the rent above that paid by the last rent-controlled tenant nor decontrol the apartment in the absence of an initial registration.
Where there is no initial or subsequent rent registration of a previously rent-controlled apartment the legal rent is the last rent under rent control. (Smitten v 56 MacDougal St. Co., 167 AD2d 205 [1st Dept 1990].) The first RR-1 served upon respondents in the instant case is dated October 25, 1999. The petition herein is dated October 12, 1999. Respondents argue that because the registration was not filed in a timely manner, the rent must revert to the last rent under rent control and the court must award treble damages as to the difference between the rent control rent and the amount of rent paid under the lease. Petitioner argues that Smitten is distinguishable on the facts and, in any event, is inapplicable in light of the passage *454 of the Rent Regulation Reform Act of 1993 (L 1993, ch 253 [RRRA 1993]).
In 320 Equities v Blount (NYLJ, Jan. 18, 1995, at 29, col 2 [Civ Ct, NY County]) the court faced a set of facts more comparable to the instant case than that of Smitten (supra). In Blount the first tenant after the vacatur by the rent-controlled tenant asserted a defense and counterclaim of rent overcharge in a nonpayment proceeding. The landlord served the RR-1 after the commencement of that proceeding and the tenant sought treble damages for the difference between the market rent and the last rent under rent control based on Smitten (supra). The landlord argued that RRRA 1993 “provide [d] immunity from overcharges which arise solely from a failure to file an initial or annual registration.” (320 Equities v Blount, supra, at 29, col 2.) The court, applying DHCR Operational Bulletin 94-1 and Administrative Code § 26-517 (e),[3] agreed that treble damages could not be obtained based solely on a landlord’s failure to register provided that increases are lawful, and that the landlord should be accorded the protection provided by RRRA 1993. (Id.) However, the court noted that certain due process considerations are implicated when an apartment goes from rent control to rent stabilization, namely, the tenant’s right to *455 a fair market rent appeal pursuant to 9 NYCRR 2522.3 and. that nothing in RRRA 1993 abrogates this right.
Later in the same year that Blount (supra) was decided, the Appellate Term reached a similar result in DBL Realty Corp. v Zavala (166 Misc 2d 736 [App Term, 1st Dept 1995]). In Zavala, the landlord commenced a nonpayment action seeking arrears of $800 per month from April through June 1993. The rental amount in the petition was the same as that set forth in the tenant’s original lease signed in September 1989. Although the landlord had filed registration statements in 1990 and subsequent years, the landlord failed to file an initial registration when the first rent-stabilized tenant took occupancy in 1988, but eventually did so in May 1993 subsequent to the commencement of the nonpayment proceeding. The tenant had filed a fair market rent appeal that was pending before DHCR at the time of the nonpayment action. The trial court granted summary judgment in favor of the tenant on the issue of the landlord’s liability for rent overcharges and treble damages. In reversing, the Appellate Term noted that the court below had not given proper effect to the provisions of RRRA 1993, specifically Administrative Code § 26-517 (e) and § 26-516 (a). As in Blount, the court preserved the tenant’s fair market rent appeal. (See also, Gruss v Cheung, NYLJ, Jan. 25, 2000, at 26, col 1 [App Term, 1st Dept].)
Although petitioner argues against the continuing vitality of the doctrine enunciated in Smitten v 56 MacDougal St. Co. (supra), the court could find no authority expressly overruling it. Indeed, following enactment of RRRA 1993, Smitten continues to be cited with approval in cases where no initial or annual rent registration statements were ever filed and in such cases landlords may not invoke the protection of RRRA 1993 and the rent reverts to the rate charged under rent control. (11 Jones St. Assocs. v Orbach, 168 Misc 2d 511 [App Term, 1st Dept 1996]; see also, Matter of Dattoma v New York State Div. of Hous. & Community Renewal, 262 AD2d 54 [1st Dept 1999]; Matter of Acunto v New York State Div. of Hous. & Community Renewal, 269 AD2d 169 [1st Dept 2000].)
The circumstances in both Blount and Zavala (supra) involved an apartment that went from rent control to fair market rent and rent stabilization. The instant case involves the added factor of high-rent decontrol and its interplay with registration requirements following the vacatur of a rent-controlled tenant, as well as the right to a fair market rent appeal notwithstanding the first rental amount after rent control *456 increasing to an amount over $2,000, purportedly pursuant to a rent guidelines order.
101 W. 70th St. Assocs. v Desoiza (NYLJ, Apr. 9, 1997, at 28, col 3 [Civ Ct, NY County], affd NYLJ, Dec. 24, 1998, at 30, col 2 [App Term, 1st Dept]) involved a nonpayment proceeding in which the tenant of record took occupancy after the vacatur by a rent-controlled tenant. Prior to the respondent’s occupancy the rent was $112.58 per month. The landlord claimed renovations to the apartment and leased it to the respondent at a rental amount of $2,200 per month. The landlord never filed or served an RR-1 contending that because the monthly rent exceeded $2,000 the apartment was exempt from rent regulation and, therefore, no such filing was necessary. In determining that service of the RR-1 was necessary even where the initial rental amount following vacatur of the rent-controlled tenant exceeded $2,000 per month the court relied, in part, upon an opinion letter, dated July 18, 1994, from DHCR Deputy Counsel which states:
“ ‘Concerning your first question, the housing accommodation would not be deregulated simply based upon the owner’s collection of a monthly rent of $2,200.00. In order to qualify for deregulation, the owner would have to show in response to a tenant challenge that the housing accommodation has a legal regulated rent of $2,000.00 or more per month. This condition is discussed in my answers to your second and third questions.
“ ‘Concerning your second and third questions, the owner would be required, to serve the first tenant to take occupancy after the renovation with an initial registration statement and the notice advising the tenant that the tenant has the right to file a fair market rent appeal. The legal regulated rent of a housing accommodation that was previously subject to the City Rent Control Law and was vacated by the rent-controlled tenant is established pursuant to the procedures governing a fair market rent appeal.
“ ‘Where the tenant fails to file a fair market rent appeal within ninety days of the service of the requisite notice mentioned above, or where the tenant files a timely appeal and DHCR determines that the legal regulated rent is $2,000.00 or more per month, the housing accommodation would be exempt from the Rent Stabilization Law in accordance with section 26-504.2. Where the tenant files a timely fair market rent appeal and DHCR determines that the legal regulated [rent] is less than $2,000.00 per month, the housing accommodation would be subject to the Rent Stabilization Law.
*457 “ Tn the latter case, future changes in the apartment’s legal regulated rent or tenancy may exempt the housing accommodation based upon the high rent or high income deregulation provisions of the Rent Stabilization Law.’ ” (101 W. 70th St. Assocs. v Desoiza, NYLJ, Apr. 9, 1997, at 28, cols 4-5, supra, quoting DHCR opn letter, July 18, 1994.)
The court noted that although a DHCR opinion letter does not represent an official determination, it does give an indication of DHCR’s interpretation of its own rules which, “ ‘if not unreasonable or irrational, is entitled to deference.’” (Id., at 28, col 5, quoting Matter of Salvati v Eimicke, 72 NY2d 784, 791 [1988].) In affirming Desoiza, the Appellate Term stated: “Landlord’s argument that it was exempt from the rent registration requirements because of high rent deregulation (see New York City Administrative Code § 26-504.2, amended by New York City Local Law 1994, No. 4) is without merit. Tenant is the initial occupant following vacatur of the previous rent controlled tenant, and the rent reserved in the lease ($2,200) is presently the subject of a fair market rent appeal. We take judicial notice of DHCR’s November 1997 order in the administrative proceeding which remanded tenant’s complaint for further processing and which held ‘The Rent Administrator will. . . determine if the unit qualifies for “high rent” deregulation. The unit will qualify for deregulation only if it is determined that the initial legal regulated rent was $2,000 per month or more.’ Thus, the apartment was not immediately deregulated upon vacancy since the present tenant is entitled as of right to challenge the ‘high rent’ set forth in the lease.” (101 W. 70th St. Assocs. v Desoiza, NYLJ, Dec. 24, 1998, at 30, cols 2-3, supra; see also, Matter of 101 W. 70th St. Assocs. v State of New York Div. of Hous. & Community Renewal, 269 AD2d 316 [1st Dept 2000].)
Based upon the above-cited authorities, when an apartment becomes vacant after occupancy by a rent-controlled tenant and the initial rent is set at or over $2,000, high-rent decontrol occurs after the tenant has been served with the RR-1 and the tenant fails to file a fair market rent appeal within 90 days thereafter pursuant to 9 NYCRR 2522.3 (a), or when the tenant has filed such an appeal and DHCR has determined that the fair market rent is $2,000 or more per month. There is no indication in the court’s file that such an appeal has taken place. However, respondents indicated that the time to file had not expired as of the date of respondents’ brief and that it is their intention to file such an appeal.
*458 Petitioner also argues that the “factual predicate” for increasing the rent is based on RGB Order No. 28 issued on June 24, 1996 which states: “The permissible increase for decontrolled units as referenced in Order 3a which become decontrolled after September 30, 1996, shall not exceed the greater of 40% above the maximum base rent as it * * * existed or would have existed plus the current allowable fuel cost adjustment established pursuant to Section 2202.13 of the Rent and Eviction Regulations, or 45% above the maximum collectible rent paid by the prior tenant plus the allowable fuel costs adjustment.” Petitioner cites no authority for the proposition that the application of this guideline obviates the need to file an initial rent registration or precludes respondents from challenging the resulting rental amount when it reaches or exceeds $2,000 per month. Furthermore, petitioner, in establishing the initial rent after the vacatur of the rent-controlled tenant, did not employ RGB Order No. 28 but used another figure, presumably the alleged fair market rent for the unit. In any event, neither the strict application of the guideline nor the establishment of rent in excess of the guideline increase can circumvent respondents’ right to file a timely fair market rent appeal.
Petitioner’s reliance on Central Park S. Assocs. v Haynes (171 Misc 2d 463 [Civ Ct, NY County]) is misplaced. In Haynes, the tenants took occupancy after vacatur of the prior rent-controlled tenant. The landlord, applying RGB guidelines, increased the rent from $1,588.83 to $2,144.92. Respondents argued that the exemption from regulation granted to apartments renting at or over $2,000 per month did not apply to the first rental following vacatur of a rent-regulated tenant. The court held that upon decontrol the subject apartment simultaneously became subject to the Rent Stabilization Law of 1969 and exempt from regulation because the rent exceeded $2,000. However, in Haynes the court was not faced with the necessity of determining whether service and filing of the RR-1 was made since DHCR had issued two prior orders which determined that the apartment was not subject to rent regulation.[4] These orders could not be collaterally attacked in a Civil Court *459 proceeding. (Chatsworth 72nd St. Corp. v Rigai, 71 Misc 2d 647 [Civ Ct, NY County 1972], affd 74 Misc 2d 298 [App Term, 1st Dept 1973], affd 43 AD2d 685 [1st Dept 1973], affd 35 NY2d 984 [1975].) In the instant case, unlike Haynes, no such prior determinations have been made by DHCR and this court is not so bound.
With regard to the amount of rent that is actually due, this court is bound by the holding in Goldman v Porges (NYLJ, Mar. 28, 1995, at 25, col 1 [App Term, 1st Dept]). In Porges, the tenants took occupancy in 1989 as the first tenants after vacatur of the rent-controlled tenant and paid an initial rent of $1,100 per month. Although the landlord did not file an initial registration pursuant to 9 NYCRR 2521.1 (a) (1) until 1993, the court found that the rent was otherwise lawful[5] but for the lack of timely registration and “the landlord shall not be found to have collected a rent overcharge for the period prior to the filing of the late registration statement” pursuant to Administrative Code § 26-517 (e). (Goldman v Porges, supra, at 25, col 2 [emphasis added].)
Where rent has not been collected Administrative Code § 26-517 (e) provides that the late filing “shall result in the prospective elimination of such sanctions” (emphasis added). A landlord cannot sue and collect for rent which was due prior to the proper registration of the subject apartment. In Porges (supra) the landlord sued for $1,100 per month for the period from May 1992 through May 1993 during which rent was withheld. The court held that since the apartment was not initially registered until June 1993, the rent during the period of the nonpayment proceeding was reduced to $171.91 which was the last rent collectible under rent control. Desoiza (supra) is in ac- . cord with Porges.
In the instant case, the registration was properly made as of October 1999. Petitioner’s argument that the apartment was first registered in July 1997 but not properly because of a computer-generated error is unavailing, since responsibility for proper registration falls upon petitioner and there is no evi *460 dence that petitioner served this registration upon the tenant. The court finds that the October 1999 registration was proper but for a de minimis error caused by DHCR listing the apartment in its records as rent stabilized when petitioner clearly intended to register the apartment as exempt. No fair reading of the October 1999 registration can result in any other interpretation and the tenants could not have been prejudiced or misled by this registration especially in light of the original lease rider which unequivocally states petitioner’s intention to exempt the unit from rent regulation based upon the legal rent exceeding $2,000 per month. The April 2000 registration appears to have resulted from an appropriate exercise of caution on the part of petitioner attempting to bring the error to DH-CR’s attention and to rectify it. Therefore, for the period from August 1999 through September 1999, the rent was $1,889.96 per month, the last rental amount under rent control. From October 1999 through May 2000, during which the apartment was properly registered, the rent was payable at the rate of $6,000 per month pursuant to the most recent lease agreement between the parties. In addition there is a $100 per month air conditioner charge. Payment of these monies is without prejudice to any fair market rent appeal to which respondents may be entitled. DHCR exercises exclusive original jurisdiction in fair market rent appeals (Smitten v 56 MacDougal St. Co., 167 AD2d 205, supra), and the court makes no finding as to whether such action is timely. Accordingly, the court grants petitioner final judgment in the amount of $52,779.92[6] as all rent due through May 2000. Issuance of warrant of eviction is stayed five days following service of a copy of the judgment.

. Although respondents do not cite the law or Code for this requirement, they are probably referring to Rent Stabilization Code (9 NYCRR) § 2528.1 which states, “Each housing accommodation subject to the RSL on April, 1984, or thereafter, and not exempted from registration by the DHCR, shall be registered by the owner thereof with the DHCR within 90 days after such date.”

. This section provided that rent stabilization shall not apply to “any housing accommodation with a legal regulated rent of two thousand dollars or more per month which is or becomes vacant on or after April first, nineteen hundred ninety-four.” (Administrative Code former § 26-504.2.) Following enactment of the Rent Regulation Reform Act of 1997, this section was amended to exclude from rent regulation “any housing accommodation which becomes vacant on or after April first, nineteen hundred ninety-seven and where at the time the tenant vacated such housing accommodation the legal regulated rent was two thousand dollars or more per month, or any housing accommodation which is or becomes vacant on or after the effective date of the rent regulation reform act of 1997 [June 19, 1997] with a legal regulated rent of two thousand dollars or more per month.”

. Operational Bulletin 94-1 states, “ ‘Treble damages may no longer be imposed against an owner based solely on the owner’s failure to register initially or annually. Where rent increases were lawful but for the owner’s failure to register, and where the owner files and serves a late registration, DHCR will not thereafter find that the owner has collected an overcharge at any time prior to the filing of the late registration.’ ” (320 Equities v Blount, supra, at 29, col 2, quoting DHCR Operational Bulletin 94-1.) The language of this Operational Bulletin tracks Administrative Code § 26-517 (e) which states: “The failure to file a proper and timely initial or annual rent registration statement shall, until such time as such registration is filed, bar an owner from applying for or collecting any rent in excess of the legal regulated rent in effect on the date of the last preceding registration statement or if no such statements have been filed, the legal regulated rent in effect on the date that the housing accommodation became subject to the registration requirements of this section. The filing of a late registration shall result in the prospective elimination of such sanctions and provided that increases in the legal regulated rent were lawful except for the failure to file a timely registration, the owner, upon the service and filing of a late registration, shall not be found to have collected an overcharge at any time prior to the filing of the late registration. If such late registration is filed subsequent to the filing of an overcharge complaint, the owner shall be assessed a late filing surcharge for each late registration in an amount equal to fifty percent of the timely rent registration fee,” and Administrative Code § 26-516 (a) which states in relevant part: “In no event shall [a] treble damage penalty be assessed against an owner based solely on said owner’s failure to file a timely or proper initial or annual rent registration statement.”

. With regard to the DHCR orders, the court in Haynes (supra, at 467) oilers a brief quotation which details neither the findings nor rationales underlying the orders: “In determining respondents’ claim of nonreceipt of an initial rent registration form, DHCR stated that the ‘[t]enant is not subject to the rent regulatory laws and therefore not within our jurisdiction.’ (DHCR order denying application, dated Sept. 27, 1996.) Thereafter, in another proceeding by one of respondents, DHCR stated that ‘[t]he subject apartment is not under the rent regulation laws/code and therefore, not within our ju *459 risdiction.’ (Order denying application, dated Oct. 10, 1996.)” The court later notes in dicta that (at 467) “ [a] 1 though it would have been better if petitioners wisely filed appropriate forms with the DHCR (e.g., RR-1 & RA-42V), lack of filing has no effect upon the status of the apartment as being unregulated (Administrative Code § 26-517 [e]; and see New York Apartment Law Insider, How to Deregulate Vacancy-Decontrolled Apartment, at 8 [Nov. 1996].)”

. At the time of the nonpayment proceeding in Porges {supra) the tenants also had a fair market rent appeal pending before DHCR.

. The court determines the amount of the judgment as follows: two months’ rent at $1,889.96 per month totalling $3,779.92, and eight months’ rent at $6,000 per month totalling $48,000. The total rent arrears for the 10-month period from August 1999 to May 2000 is $51,779.92. The court also added $1,000 in air conditioner charges (10 X $100). The total is $52,779.92.