[808 NYS2d 590]

Ira Pekelnaya, as Guardian ad Litem for Michael Taratuta, an Incompetent, et al., Respondents, v Jerri Allyn et al., Appellants, et al., Defendants.

First Department, October 25, 2005

## APPEARANCES OF COUNSEL

*Acito Klein & Candiloros, P.C.*, New York City (*Costas M. Eliades* and *William N. Candiloros* of counsel), for Jerri Allyn, appellant.

*Michael P. Mangan*, New York City, for Ivan Santiago and another, appellants.

*Tarshis & Hammerman LLP*, Forest Hills (*Roberta E. Tarshis* of counsel), for Robert H. Roy and another, appellants.

*Wayne E. Batcheler*, New York City, for Noelle A. Dean, appellant.

*Russo, Keane & Toner, LLP*, New York City (*Thomas F. Keane, Christopher G. Keane* and *Alan Russo* of counsel), for Gustavo Rusconi, appellant.

*Marshall, Conway & Wright, P.C.*, New York City (*Steven L. Sonkin* of counsel), for Jose O. Asiatico, appellant.

*Hoey, King, Toker & Epstein*, New York City (*Danielle M. Regan* of counsel), for David Secul, appellant.

*Shapiro, Beilly, Rosenberg, Aronowitz, Levy & Fox, LLP*, New York City (*Roy J. Karlin* of counsel), for Rosia M. Remy, appellant.

*Leahey & Johnson, P.C.*, New York City (*Peter James Johnson, Jr., Peter James Johnson, James P. Tenney* and *Kimberly Schirripa* of counsel), for Maria Hinojosa, appellant.

*Gair, Gair, Conason, Steigman & Mackauf*, New York City (*Robert L. Conason* and *Rhonda E. Kay* of counsel), for respondents.

*Snow Becker Krauss P.C.*, New York City (*Marc J. Luxemburg* and *David Lackowitz* of counsel), for Council of New York Cooperatives and Condominiums, amicus curiae.

## OPINION OF THE COURT

Tom, J.P.

The novel issue raised on this appeal is whether the proportionate interest in the common elements of a condominium held by the owners of the individual units subjects them to liability for injuries sustained by a third party as the result of a defective condition in a common element. In the absence of any statutory basis for recovery, control rather than the unit owners' common interest is the operative criterion upon which liability is predicated. In the absence of such control by the individual unit owners over that component of the common elements alleged to be defective, this Court concludes that the individual defendants cannot be held answerable in damages.

Plaintiffs Aba and Michael Taratuta are father and son. Defendants are the individual owners of the 11 units comprising the Park 106 Condominium, located at 69 West 106th Street in Manhattan (collectively, the unit owners). While walking on the sidewalk, Aba and Michael Taratuta were struck and seriously injured by a section of chain-link fence, measuring approximately four feet by five feet, that fell from the roof of the condominium. The dislodged section was part of a security fence erected along the parapet wall of the roof to prevent access from adjoining buildings. It was installed prior to the time the condominium acquired the building and, thus, before the unit owners acquired their interest in the common elements upon taking possession of their respective apartments.

Michael Taratuta's injuries included traumatic brain injury, open comminuted skull fractures and multiple intracerebral hemorrhages and contusions, which rendered him severely and permanently disabled. His father sustained blunt head trauma and fractures of the vertebral column, among other injuries. Plaintiffs commenced a previous action against the condominium's board of managers on the theory that the board is responsible for the maintenance of common elements, including the rooftop security fence. Allegedly because damages will exceed the $2 million in insurance carried by the board, plaintiffs commenced this action against the unit owners.[1]

Invoking the doctrine of res ipsa loquitur, the injured plaintiffs seek to recover damages based upon defendants' status as owners of the individual condominium apartments located in

1. According to the briefs, the two actions have been consolidated by Supreme Court.

the 11-unit, five-story building. Aba Taratuta additionally seeks to recover damages for the emotional distress he suffered as a result of witnessing the injury to his son while within the immediate zone of danger. Plaintiff Ida Taratuta, Aba Taratuta's wife, seeks derivative damages in connection with the injuries sustained by her husband.

The unit owners hold title to their respective condominium apartments in fee simple absolute (Real Property Law § 339-e [16]). The condominium declaration accords each unit an ownership interest of approximately 9% in the common elements, which comprises the unit owner's "common interest" (Real Property Law § 339-e [5] [i]). The roof of the premises is included in the common elements. However, it is designated a "limited" common element because its use is restricted to the owners of the fifth-floor apartments, defendants Hinojosa and Ragues, each of whom is allotted a 50% ownership interest in the limited common element. The provisions of the declaration notwithstanding, plaintiffs assert that "the 'access' to the roof is not exclusive to the owners of Units 5A and 5B since such units do not have 'direct and exclusive access from the interior of [their] respective units.' " Rather, all unit owners have the same access to the roof, which can only be reached by way of a common interior stairway leading to a common doorway at roof level. Thus, for purposes of this appeal, the unit owners are all in the same legal position.

The unit owners appeal from the denial of their motions for accelerated judgment dismissing the complaint and all cross claims against them (CPLR 3211, 3212). On the motion, they argued that (1) in the absence of control over the roof of the building, they had no duty to inspect or maintain the roof area or the rooftop security fence; (2) they had no prior notice of any defect or dangerous condition relating to the fence; and (3) under the condominium's governing instruments, access to the roof of the building, where the dislodged portion of the security fence was located, is exclusively the right of the owners of apartments 5A and 5B.[2]

Supreme Court denied the motions, reasoning that Multiple Dwelling Law § 78 places the responsibility to maintain the premises in safe condition upon the "owner." Because the unit owners have not relinquished their collective ownership of the

---

2. The briefs reflect that this argument was interposed in connection with the issue of defendants' constructive notice of the hazardous condition.

common elements, the court concluded that they are statutorily liable to plaintiffs.

On this appeal, the unit owners argue that the Condominium Act (Real Property Law § 339-d *et seq.*) places the duty to maintain the common elements on the condominium's board of managers. They further contend that the court improperly applied the doctrine of res ipsa loquitur to subject them to liability.

Plaintiffs concede that the parapet-wall fence forms part of the common elements of the condominium. Plaintiffs also acknowledge that the board has the power and the duty to maintain the common elements. Nevertheless, plaintiffs contend that because of the part interest held by each individual unit owner in the condominium's common elements, Multiple Dwelling Law § 78 imposes upon them, as their collective owner, a nondelegable "duty to persons on its premises to maintain them in a reasonably safe condition" (*Mas v Two Bridges Assoc.*, 75 NY2d 680, 687 [1990]). Plaintiffs argue that statutory liability is abated only if an owner has parted with all possession and control of the premises (citing *Bonifacio v 910-930 S. Blvd.*, 295 AD2d 86 [2002]).

Initially, plaintiffs take issue with the unit owners' contention that, by statute, maintenance and repair of the individual condominium unit is the responsibility of the unit owner, while maintenance and repair of the common elements is the responsibility of the board of managers. Plaintiffs argue that, while the board of managers is designated as the "person in control of the common elements" (Real Property Law § 339-ee [1]),[3] the statutory designation is limited, by its terms, to the condominium's duty to comply with owner registration provisions; all other provisions of the Multiple Dwelling Law, including section 78, remain applicable. Plaintiffs conclude that, under

---

3. As material to this dispute, Real Property Law § 339-ee (1) provides: "Any provision of the multiple dwelling law, the multiple residence law, or any state building construction code . . . requiring registration by the owner or other person having control of a multiple dwelling shall be deemed satisfied in the case of a property submitted to the provisions of this article by registration of the board of managers . . . ; each unit owner shall be deemed the person in control of the unit owned by him or her, and the board of managers shall be deemed the person in control of the common elements, for purposes of enforcement of any such law or code, provided, however, that all other provisions of the multiple dwelling law . . . , otherwise applicable, shall be in full force and effect."

the latter provision, the unit owners remain liable for the defective condition of the parapet-wall fence by virtue of their respective minority ownership interests in the common elements.

As to the merits, plaintiffs rely on the doctrine of res ipsa loquitur, noting that portions of rooftop fencing do not normally drop to the sidewalk in the absence of some sort of negligence. Res ipsa loquitur may be invoked when a plaintiff can establish that (1) the type of accident is one that does not occur in the absence of negligence; (2) it is attributable to an agency or instrumentality within the defendant's exclusive control; and (3) the injury sustained was not caused or exacerbated by any voluntary action on the plaintiff's part (*Mejia v New York City Tr. Auth.*, 291 AD2d 225, 227 [2002]). Plaintiffs contend that the second element is satisfied by the exclusive control over the fence exercised by the condominium's board of managers, itself composed of unit owners, as agent for the unit owners. They note that pursuant to the condominium bylaws, article 2, § 2.1, the board "shall act as, and shall be, the agent of the Unit Owners."

Finally, plaintiffs assert that, in support of the motions for dismissal, the individual owners submitted only an unsworn engineering report of an inspection conducted six months prior to the accident. Plaintiffs discount as merely conclusory the unit owners' affidavits declaring their lack of notice of the defective condition of the fence.

The issue to be decided on this appeal—whether liability should be imposed on the owners of individual condominium units for injuries to third persons resulting from a defect in a common element—is apparently a case of first impression. Plaintiffs note that, unlike some other jurisdictions, New York State has not provided for the allocation of responsibility for injury to third persons as the result of negligence in the maintenance and repair of common elements. The unit owners contend, to the contrary, that Real Property Law § 339-ee (1) is dispositive of the issue.

The statutory provisions cited by both sides in support of their respective positions are ultimately unavailing. With respect to Real Property Law § 339-ee (1), plaintiffs make a compelling argument. Essentially, the statute provides that "[a]ny provision . . . requiring registration by the owner . . . shall be deemed satisfied . . . by registration of the board of managers." Assignment of responsibility of the common elements to the board of managers is stated to be "for purposes of enforcement

of any such law or code," and any provision of the Multiple Dwelling Law "otherwise applicable, shall be in full force and effect."

It has been observed that "the apparent purpose of the registration statutes is to enable tenants and governmental authorities to readily contact owners or persons responsible for the operation of multiple dwellings" (*Lazarus v Liebowitz*, 85 Misc 2d 822, 827 [1976]). Registration facilitates the service of notices, orders and summonses (Multiple Dwelling Law § 326) in connection with the enforcement of the Building Code and similar measures such as the Multiple Dwelling Law, which was enacted for the purpose of establishing and maintaining housing standards (*see B.S.L. One Owners Corp. v Rubenstein*, 159 Misc 2d 903, 906 [1994]). While Real Property Law § 339-ee (1) places responsibility on the board of managers to respond to a notice of violation pursuant to Multiple Dwelling Law § 326 (1) (*Matter of William B. May Co. v Department of Health of City of N.Y.*, 123 Misc 2d 1010, 1013 [1984]), it does not address the subject of responsibility for personal injury sustained by third persons due to a defective condition on the premises. Thus, plaintiffs are correct in their assertion that the registration provision of Real Property Law § 339-ee (1) does not relieve the unit owners from liability for injury sustained by reason of a defect in the common elements.

Consideration turns to plaintiffs' contention that Multiple Dwelling Law § 78 imposes liability on the unit owners by virtue of their ownership interest in the common elements. As previously noted, section 78 makes an "owner" responsible "for the safe maintenance of the building and its facilities" (*Garcia v Dormitory Auth. of State of N.Y.*, 195 AD2d 288, 288 [1993]). The term "owner" is defined in Multiple Dwelling Law § 4 (44) to "include the owner or owners of the freehold of the premises or lesser estate therein, a mortgagee or vendee in possession, assignee of rents, receiver, executor, trustee, lessee, agent, or any other person, firm or corporation, directly or indirectly in control of a dwelling." Plaintiffs argue that the unit owners, by virtue of their aggregate, respective minority ownership interests, are the "owner or owners" of the common elements. Alternatively, plaintiffs maintain that because the unit owners have surrendered less than complete ownership and control of the common elements to the board of managers, they cannot escape the liability imposed on owners by Multiple Dwelling Law § 78.

As this Court has stated, "The controlling tenet of statutory construction is that an act shall be given the effect intended by the Legislature (McKinney's Cons Laws of NY, Book 1, Statutes § 92 [a])" (*Thoreson v Penthouse Intl.*, 179 AD2d 29, 33 [1992], *affd* 80 NY2d 490 [1992]). It is inconceivable that the Legislature intended the definition of the term "owner" contained in the Multiple Dwelling Law to apply to individual condominium unit owners because the Multiple Dwelling Law (L 1929, ch 713) preceded the enactment of the Condominium Act (L 1964, ch 82) by some 35 years.

Plaintiffs correctly note that the condominium form of ownership is purely a creature of statute. As a legislative enactment in derogation of the common law, the Condominium Act is subject to strict construction (*see Matter of Bayswater Health Related Facility v Karagheuzoff*, 37 NY2d 408, 414 [1975] [zoning ordinance]; *Maxwell v State Farm Mut. Auto. Ins. Co.*, 92 AD2d 1049, 1050 [1983] [no-fault insurance]; McKinney's Cons Laws of NY, Book 1, Statutes § 301). Especially where statutes impose liability where none was previously recognized, "they are deemed to abrogate the common law only to the extent required by the clear import of the statutory language" (*Morris v Snappy Car Rental*, 84 NY2d 21, 28 [1994]). Plaintiffs do not point to any provision of the Condominium Act that imposes liability on a unit owner for injury caused by the defective condition of a common element; nor do they suggest that the common law recognizes liability based upon such a premise. Indeed, they concede that the Condominium Act does not address the apportionment of tort liability involving a common element.

The condominium being a creature of statute, the Legislature is the appropriate body to weigh the interest of an injured party in recovering damages against the interest of the individual unit owners in avoiding liability for the consequences of acts or omissions beyond their control. The failure of the Legislature to provide for liability in the absence of control by condominium unit owners over the maintenance and repair of the common elements precludes the courts from imposing responsibility by implication. Statutes which create such vicarious liability are narrowly construed (*id.* at 27-28). "The Legislature is presumed to be aware of the law in existence at the time of an enactment and to have abrogated the common law only to the extent that the clear import of the language of the statute requires" (*B & F Bldg. Corp. v Liebig*, 76 NY2d 689, 693 [1990]). The condominium form of ownership being purely a creation of statute, in the

absence of any provision in the Condominium Act holding the unit owners vicariously liable for the acts and omissions of the board of managers, it cannot be said that the Legislature intended to provide a means of recovery to an injured third person predicated solely upon the interest of the unit owners in the common elements.

Plaintiffs advance the argument that the unit owners should be held liable for the board's negligence in the maintenance of the common elements based upon a principal-agent relationship. Multiple Dwelling Law § 4 (44) defines "owner" to include "any . . . person . . . directly or indirectly in control of a dwelling." Thus, plaintiffs suggest, the unit owners are responsible for maintenance and repairs to the common elements because the condominium board acts on their behalf.

While this argument is superficially plausible, it is unsupported by either common law, the Condominium Act or practical experience. Where, as here, the putative agent (the board of managers) is not a servant, vicarious liability will not be imposed on the principal (the unit owners, collectively). "Since an agent who is not a servant is not subject to any right of control by his employer over the details of his physical conduct, the responsibility ordinarily rests upon the agent alone, and the principal is not liable for the torts which [the agent] may commit" (Prosser and Keaton, Torts § 70, at 508 [5th ed]).

Vicarious liability of a principal for an agent's negligence is predicated on "the general common law notion that one who is in a position to exercise some general control over the situation must exercise it or bear the loss" (id. § 69, at 500). In the extreme, where the principal's control is exclusive, liability may be imposed under the doctrine of res ipsa loquitur. For instance, under circumstances where two unconscious plaintiffs were under a hospital's care and the hospital conceded that it exercised complete control over the premises, the hospital staff and the instrumentality causing injury, liability was imposed even though injury resulted from the deliberate act of an unknown person (Morris v Lenox Hill Hosp., 232 AD2d 184 [1996], affd 90 NY2d 953 [1997], for reasons stated below [poisoning]).

Where control is lacking, however, liability is not imposed even when, in the context of a motion for summary judgment to dismiss the complaint, it is presumed that the putative principal's negligence can be established (see Sawh v Schoen, 215 AD2d 291 [1995]). In Sawh, a doctor gave allegedly erroneous advice to a colleague concerning a patient of their shared

medical practice. The advising physician was not held liable for the patient's resulting injury due to his lack of control over either the patient's care or the colleague who administered it (*id.* at 292-294). The element of control is necessary to impose vicarious liability for an agent's negligence on the principal. As this Court stated in *Garcia v Herald Tribune Fresh Air Fund* (51 AD2d 897, 897 [1976]), "[i]t is well settled that a principal-agency relationship exists where one retains a degree of direction and control over another."

It is clear that condominium common elements are solely under the control of the board of managers. The Condominium Act provides that the cost of materials and labor incurred in connection with the common elements is payable out of common charges (Real Property Law § 339-e [2]), which "shall constitute trust funds for the purpose of paying the cost of such labor or materials performed or furnished at the express request or with the consent of the manager, managing agent or board of managers, and the same shall be expended first for such purpose before expending any part of the same for any other purpose" (Real Property Law § 339-*l* [2]).[4] Implicit in the statutory requirement that work on the common elements be performed "at the express request or with the consent of the . . . board of managers" is the recognition that the board exercises exclusive control over the common elements.

The control purportedly exercised by the unit owners, as collective principal, over the board of managers, as purported agent, is flatly contradicted by case law reflecting general experience with residential forms of common and cooperative ownership. A board of managers "takes on the burden of managing the property for the benefit of the proprietary lessees. As one court observed, 'Every man may justly consider his home his castle and himself as the king thereof; nonetheless his sovereign fiat to use his property as he pleases must yield, at least in degree, where ownership is in common or cooperation with others. The benefits of condominium living and ownership demand no less' " (*Matter of Levandusky v One Fifth Ave. Apt. Corp.*, 75 NY2d 530, 537 [1990], quoting *Sterling Vil. Condominium, Inc. v Breitenbach*, 251 So 2d 685, 688 [Fla 1971]).

---

4. Similarly, Real Property Law § 339-cc (1) provides, in material part: "damage to or destruction of the building shall be promptly repaired and reconstructed by the board of managers, using the proceeds of insurance, if any, on the building for that purpose, and any deficiency shall constitute common expenses."

The prerogative of a board of managers to conduct business as it sees fit is well established. If a condominium or cooperative board were the mere instrumentality of its constituent unit owners, as plaintiffs suggest, the Court of Appeals would not have been moved to note that "some check on its potential powers to regulate residents' conduct, life-style and property rights is necessary to protect individual residents from abusive exercise, notwithstanding that the residents have, to an extent, consented to be regulated and even selected their representatives" (*Levandusky*, 75 NY2d at 537). However, judicial restraint of the board's powers is not permitted to abrogate "the purposes for which the residential community and its governing structure were formed: protection of the interest of the entire community of residents in an environment managed by the board for the common benefit" (*id.*). Under the applicable standard of review afforded by the business judgment rule, so long as a managing board acts without discriminatory intent, actions taken "in furtherance of a legitimate purpose of the cooperative or condominium . . . will generally be upheld" (*id.* at 539; *see also Horwitz v 1025 Fifth Ave., Inc.*, 7 AD3d 461, 462 [2004]).

The realities of cooperative and condominium governance simply do not comport with plaintiffs' attribution of control to the unit owners based on the board's designation as their agent. Since the unit owners have no control over, or direct responsibility for, the common elements and neither statutory nor common law renders an individual condominium unit owner liable for injuries sustained as the result of defects in the common elements, the unit owners are not liable for plaintiffs' damages (*see Smith v Parkchester N. Condominium*, 163 Misc 2d 66 [1994]). As this Court stated in *Aarons v 401 Hotel, L.P.* (12 AD3d 293, 293-294 [2004]), "An undivided interest in the common elements, including the land, does not equate with a proprietary interest in the portion of the building where the accident occurred sufficient to impose liability."

Plaintiffs further argue that the unit owners should be held liable as a matter of policy to afford a means of recovery to a person injured by a defect in the common elements. They note that unlike the cooperative form of ownership, in which the corporation is the owner of the premises and thus provides a source of payment for damages in excess of insurance coverage, the condominium is owned by the unit owners. Therefore, if the condominium's board of managers does not carry insurance against injury to third persons, the effect is to render the condominium judgment proof under circumstances such as these.

While the concern voiced by plaintiffs is sound, it is not material to the matter before us. Here, the condominium board has obtained substantial insurance coverage. Plaintiffs' grievance is not that the amount of liability insurance is inconsequential but that it will be insufficient to cover their damages. Be that as it may, the law only affords a means of recovery; it does not guarantee that the defendant will have sufficient resources to provide full compensation for any and all losses sustained. The situation confronting plaintiffs in this regard is no different than that faced by a plaintiff who is severely injured by a motorist carrying only the minimum liability insurance required by the Vehicle and Traffic Law.

We note that the Condominium Act, while setting forth minimum insurance requirements for property damage (Real Property Law § 339-bb), makes no provision for minimum liability coverage. Defendant Noelle A. Dean points out that California Civil Code § 1365.9 (b) (2) (A) requires a condominium to obtain minimum liability insurance in the amount of $2 million if it contains 100 or fewer units. This is precisely the amount of liability coverage obtained by the board of managers in this case. Thus, the board cannot be faulted for unreasonably disregarding the interests of third parties who might sustain injury as the result of the condition of the premises. Nor can it be said that the board failed to exercise good faith in deciding the appropriate amount of liability coverage or that its decision was not the product of honest judgment in furtherance of a legitimate purpose of the condominium (*see Auerbach v Bennett*, 47 NY2d 619, 629 [1979]).

Whether a judgment awarding damages for personal injury sustained as the result of the defective condition of the common elements of a condominium should be enforceable against the individual dwelling units and whether the board of managers of a condominium should be required to carry a minimum amount of general liability insurance, and the amount of such coverage, are matters appropriately addressed by the Legislature. Balancing the resulting public benefit against the financial impact upon the individual condominium unit owners and the infringement upon the discretion of the board of managers to exercise its business judgment involves competing policy considerations that are within the particular province of the legislative branch of government (*see Matter of Kelley* [*City Volunteer Corps—Hartnett*], 166 AD2d 822, 824 [1990]). We urge legislation to require a condominium to obtain a minimum amount of liability

insurance coverage in such amount as may be deemed adequate to protect the public.

Accordingly, the order of the Supreme Court, New York County (Sherry Klein Heitler, J.), entered January 22, 2004, insofar as it denied defendants' respective motions and cross motions for summary judgment dismissing the complaint and all cross claims against them, should be reversed, on the law, without costs, and the motions and cross motions granted. The Clerk is directed to enter judgment accordingly.

ANDRIAS, GONZALEZ and CATTERSON, JJ., concur.

Order, Supreme Court, New York County, entered January 22, 2004, reversed, on the law, without costs, and defendants' respective motions and cross motions for summary judgment dismissing the complaint and all cross claims against them granted. The Clerk is directed to enter judgment accordingly.