OPINION OF THE COURT
Paul G. Feinman, J.
Defendant Mercer Square LLC (LLC) moves pursuant to CPLR 3212 for summary judgment dismissing the verified complaint and all cross claims against it. Defendant Bath & Body Works, LLC (BBW) cross-moves to dismiss plaintiffs complaint and all cross claims asserted against it. By separate cross motion, defendants Mercer Square Owners Corp. (Owners Corp.), Mercer Square Associates (Associates), Residential Management Group, LLC, Residential Management Group doing business as Douglas Elliman Property Management, Douglas Elliman Property Management and Insignia Residential Group, Inc. (collectively, the Douglas Group) cross-move also seeking dismissal of all claims and cross claims. Each motion and cross motion has been opposed, with the exception of Associates’ cross motion for summary judgment.
For the reasons explained below, LLC’s motion is denied, BBW’s cross motion is granted, Owners Corp.’s cross motion is denied in part and granted in part, and the Douglas Group’s cross motion is granted. Also, Associates’ unopposed motion is granted in its entirety.
Background
In this action, plaintiff alleges that on April 15, 2005, she tripped and fell over a broken portion of the sidewalk in front of a mixed-use building located at 693 Broadway/250 Mercer Street, New York, New York (hereinafter, the Building or 250 Mercer Street or Condominium). The Building is a condominium consisting of only two units: (1) a residential unit owned by defendant Owners Corp., a residential cooperative; and (2) a commercial unit formerly owned by Associates but transferred *839 to LLC in 2000. The commercial unit contains several retail and commercial subunits and is located entirely on the first floor. The residential unit includes a lobby and a few storage areas on the first floor, and everything from the second floor up. Defendant BBW operates a retail store in the Building pursuant to a lease with LLC. The Douglas Group is the Building’s management company, pursuant to a management agreement entered into with Owners Corp. Although the management agreement is between Owners Corp. and Insignia Residential Group, it applies to all of the various entities that have grouped together under the name the “Douglas Group,” because they “are all names under which the managing agent Douglas Elliman Property Management has done business. They are different names for the same entity, a singular managing agent and defendant in the above-captioned matter” (document 72-3, exhibit C, Ballison affidavit 11 2).
The Condominium’s declaration and bylaws govern the operations of the property as between the individual unit owners. Article 9 (1) of the declaration defines “common elements” to include, among other things, “[a]ll of the sidewalks outside of and immediately appurtenant to the Building” (document 35-3, declaration at 8). However, it also provides the following:
“Excluded from the Common Elements are windows and doors in the exterior walls of the Building which are utilized exclusively in relationship to either the Residential or Commercial Unit. The Commercial Unit Owner shall have an exclusive easement for use of that portion of the Common Elements that includes the store fronts, entrances and sidewalks. The Commercial Unit Owner shall have the right to alter and improve the store fronts and entrances . . . The Common Interest of the Residential Unit in the Common Elements shall be 82.3 percent thereof and the Common Interest of the Commercial Unit shall be 17.7 percent thereof’ (id. at 9 [emphasis added]).
This easement is reaffirmed in article 13, which lists several easements that “shall affect the Condominium,” including an “(b) easement in favor of the Unit having the exclusive use of portions of the Common Elements” (id. at 12). Furthermore, “[t]he user of any easement granted by the above subparagraphs of this Article 13 shall have the responsibility of repairing any damage resulting therefrom” (id. at 13). The parties do not appear to dispute that plaintiffs alleged accident occurred on the *840 sidewalk in front of the retail store operated by BBW under a lease agreement with LLC.
Plaintiff commenced this action by filing the summons and verified complaint with the New York County Clerk’s office on June 20, 2007. The verified complaint asserts one cause of action sounding in negligence, pleaded in a conclusory manner and providing very few details regarding the nature of the alleged defect in the sidewalk, the specific location of the incident, and plaintiffs alleged injuries. Thereafter, defendants answered and asserted various cross claims against each other. Discovery has been exchanged and the parties have conducted depositions of their designated individuals.
Analysis
1. Procedural Matters
a. Use of Cross Motion
The parties were advised on the record at oral argument of their improper use of a cross motion to obtain relief against a nonmoving party (see CPLR 2215 [“a party may serve upon the moving party a notice of cross motion demanding relief”] [emphasis added]). However, because any objection on this procedural ground has been waived by addressing the cross motions on their merits, and in the absence of a claim by any party of prejudice, the court will exercise its discretion to ignore the defect and reach the merits of the motion and cross motions (see CPLR 2001).
b. Submission of Surreply Papers
Counsel for plaintiff, BBW and LLC have each requested leave, by way of separate letters submitted to the court, asking for permission to file surreply papers to address material evidence presented for the first time in Owners Corp.’s reply papers in support of its cross motion for summary judgment. As described in further detail later in this decision and order, Owners Corp. now offers evidence that it argues shows that John O’Sullivan, the individual deposed on behalf of Owners Corp. in this action, is not in fact an employee of Owners Corp., in contrast to the unequivocal deposition testimony of O’Sullivan and deponents from the Douglas Group, as well as the arguments made by Owners Corp. in its moving papers. Although the Part 12 rules strongly discourage the parties from sending correspondence directly to the court, based on the circumstances involved here, the court will exercise its discretion and deem these letters part of the record to be considered in connection *841 with the instant motion and cross motions. The propriety of the “newly discovered” evidence presented for the first time in Owners Corp.’s reply papers will be addressed later in this decision and order.
2. Summary Judgment
A movant seeking summary judgment in its favor must first make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence in admissible form to eliminate any material issues of fact from the case (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). If this standard is met, the burden then shifts to the opposing party who, to defeat the motion, must demonstrate the existence of a triable issue of fact (Zuckerman v City of New York, 49 NY2d 557 [1980]). If the credibility of evidence is an issue, summary judgment should not be granted (see Hartford Acc. & Indem. Co. v Wesolowski, 33 NY2d 169 [1973]).
Under CPLR 3212 (b), the motion must “be supported by affidavit, by a copy of the pleadings and by other available proof, such as depositions and written admissions.” The affidavit must be “by a person having knowledge of the facts; it shall recite all the material facts; and it shall show that there is no defense to the cause of action or that the cause of action or defense has no merit” (CPLR 3212 [b]). The bare affirmation of a party’s attorney who demonstrates no personal knowledge is “without evidentiary value and thus unavailing” (Zuckerman, 49 NY2d at 563). “The affidavit or affirmation of an attorney, even if he has no personal knowledge of the facts, may, of course, serve as the vehicle for the submission of acceptable attachments which do provide ‘evidentiary proof in admissible form’, e.g., documents, transcripts” (id.).
3. Administrative Code of the City of New York § 7-210 and LLC’s Motion for Summary Judgment
Plaintiffs complaint in this action asserts a single cause of action against all defendants sounding in negligence. “A defendant stands liable in negligence only for breach of a duty of care owed to the plaintiff’ (Sanchez v State of New York, 99 NY2d 247, 252 [2002]). Where the complaint alleges plaintiff tripped and fell due to the defective condition of a public sidewalk, the Administrative Code of the City of New York § 7-210 is the starting point for the duty analysis. This provision imposes a “nondelegable duty on the owner of the abutting premises to maintain and repair the sidewalk” (Collado v Cruz, 81 AD3d 542, 542 [1st Dept 2011]). Specifically, the Code states the *842 “owner of the real property abutting any sidewalk . . . shall be liable for any injury to property or personal injury . . . proximately caused by the failure of such owner to maintain such sidewalk in a reasonably safe condition” (Administrative Code § 7-210 [b]). “Failure to maintain such sidewalk in a reasonably safe condition shall include, but not be limited to, the negligent failure to install, construct, reconstruct, repave, repair or replace defective flags” (id.). As with any negligence claim against a landowner for its failure to maintain its premises in a reasonably safe condition, “liability for an accident on a sidewalk abutting real property will arise when it is established that the owner of said property created the condition alleged or had prior notice” (Early v Hilton Hotels Corp., 73 AD3d 559, 561 [1st Dept 2010]). A defendant owner is charged with having constructive notice of a defective condition when the condition is “visible, apparent, and exists for a sufficient length of time prior to the occurrence of an accident to permit the defendant to discover and remedy the condition” (id. at 561, quoting Gordon v American Museum of Natural History, 67 NY2d 836, 837-838 [1986]). The absence of evidence demonstrating how long a condition existed prior to plaintiffs accident “constitutes a failure to establish the existence of constructive notice as a matter of law” (id.).
The preliminary issue is whether LLC, the admitted owner of the commercial unit portion of the Condominium, shall be deemed an “owner” within the meaning of Administrative Code § 7-210. This analysis first requires examination of the Condominium’s declaration and bylaws. Generally, where a condominium’s governing documents delegate responsibility for maintenance and repairs to the common elements of the condominium to its board of managers, the individual unit owners cannot be liable for injuries caused by alleged defects in those common areas (Pekelnaya v Allyn, 25 AD3d 111, 113 [1st Dept 2005]; Rothstein v 400 E. 54th St. Co., 51 AD3d 431, 432 [1st Dept 2008]). In such cases, liability is predicated on the control squarely placed with the board of managers, and the unit owner’s proportionate ownership interest in the common elements does not provide the requisite degree of control necessary to impose a duty to the injured plaintiff (Pekelnaya, 25 AD3d at 111).
Here, the Condominium’s declaration defines “Common Elements” to include “[a] 11 of the sidewalks outside of and immediately appurtenant to the Building” (document 35-3, exhibit *843 V, declaration art 9 [1]), and states that the “cost of maintenance, repair and replacement of Common Elements will be borne by all Unit Owners as a Common Expense of the Condominium, in proportion to their respective interests in the Common Elements” (id. at 9). However, the declaration also “[e]xclude[s] from the Common Elements . . . windows or doors in the exterior walls of the Building which are utilized exclusively in relationship to either the Residential or Commercial Unit” (id.). It continues, “[t]he Commercial Unit Owner shall have an exclusive easement for the use of that portion of the Common Elements that includes the store fronts, entrances and sidewalks. The Commercial Unit Owner shall have the right to alter and improve the store fronts and entrances” (id.). This easement is again affirmed in article 13, which lists several easements that “shall affect the Condominium,” including an “(b) easement in favor of the Unit having the exclusive use of portions of the Common Elements” (id. at 12). Furthermore, “[t]he user of any easement granted by the above subparagraphs of this Article 13 shall have the responsibility of repairing any damage resulting therefrom” (id. at 13). LLC does not provide any documentary evidence showing subsequent amendments to this declaration that conflict with the provisions quoted above.
As shown above, LLC, as the owner of the commercial unit, is granted an exclusive easement over the store fronts, entrances and sidewalks. This exclusive easement over areas that otherwise would be considered common elements, brings article 13 into effect, thus assigning to LLC the responsibility of makings repairs to any damaged portion of the sidewalk surrounding the commercial unit. Aside from the duties imposed by article 13, the declaration’s grant of an exclusive easement, absent specific language in the easement grant indicating otherwise, places upon LLC, as the owner of the dominant estate, responsibility for repairing and maintaining the easement in good condition (see 49 NY Jur 2d, Easements and Licenses in Real Property § 127). The servient owner, here the Condominium, has no obligation to perform work or bear the expense of keeping the facility in a state of good repair, and may not be held liable for injuries to third parties caused by the condition of the easement (id.; Tagle v Jakob, 97 NY2d 165, 168 [2001]). Moreover, evidence of the existence of an easement may be used to establish ownership of the relevant portion of abutting property for purposes of determining liability under Administrative Code § 7-210 (cf. Montalbano v 136 W. 80 St. CP, *844 84 AD3d 600, 602 [1st Dept 2011] [liability under § 7-210 was not available where “(n)either Owner’s Corp. nor plaintiff has submitted any evidence of an easement or anything else that would establish ownership of that portion of the property”]).
There is no dispute that the allegedly defective condition that plaintiff claims caused her to trip and fall was located on the sidewalk in front of the store operated by BBW, pursuant to a lease with LLC. This area thus falls within the portion of the Building’s property delegated to LLC’s exclusive use and control. Therefore, LLC may be deemed an “owner” of abutting real property for purposes of Administrative Code § 7-210.
Thus, to prevail in its instant motion for summary judgment, LLC must establish its prima facie entitlement to dismissal as a matter of law by submitting admissible evidence that LLC neither created the dangerous condition on the sidewalk, nor failed to remedy the condition despite having actual or constructive notice of the defect {Early, 73 AD3d at 561). LLC argues that the deposition testimony of its deponent, Leichter, demonstrates that it neither created the condition nor had any notice thereof (document 33, Marchick affirmation H 25). As an initial point, the court notes that the transcript of Leichter’s deposition is neither signed by him nor certified by the court reporter {see CPLR 3116). Notwithstanding, review of the substance of Leichter’s testimony shows that he repeatedly denied any knowledge of the condition of the relevant portion of the sidewalk during the relevant time period {see e.g. document 34-3, exhibit L, Leichter transcript at 27). Furthermore, when asked whether he had “any day-to-day responsibilities currently with respect to” the building at issue, he replied, “[w]ell, not with respect to the building but with respect to the commercial entity, I together with my partner make lease decisions, renewing leases” {id. at 12-13). Other than this limited role, he claimed not to have any “involvement in any portion of the building” and only went to the property “twice a year” {id. at 13).
In light of LLC’s statutory nondelegable duty to maintain the sidewalk {see Cook v Consolidated Edison Co. of NY, Inc., 51 AD3d 447, 448 [1st Dept 2008]), and Leichter’s lack of personal knowledge regarding the conditions and maintenance practices at the building at issue, LLC has failed to establish its prima facie entitlement to summary judgment as a matter of law. Leichter’s deposition was not probative on the issue of notice because he had no personal knowledge of the condition of the *845 sidewalk at the time of the accident or in the hours immediately-preceding it (Lebron v Napa Realty Corp., 65 AD3d 436, 437 [1st Dept 2009]). Accordingly, the portion of LLC’s motion for summary judgment seeking dismissal of plaintiff’s cause of action sounding in negligence must be denied. The portion of LLC’s motion seeking dismissal of all cross claims would therefore be premature and must also be denied, as there are issues of fact remaining regarding LLC’s negligence.
4. Common-Law Landowner’s Duty
The court’s holding above, that LLC may be treated as an “owner” for purposes of Administrative Code § 7-210, does not require granting the remaining defendants’ cross motions for summary judgment. It is true that the “Code does not make persons who exercise control over the sidewalk liable — it refers only to owners of real property” (Montalbano v 136 W. 80 St. CP, 84 AD3d 600, 602 [2011]). However, the applicability of Administrative Code § 7-210 does not necessarily preclude defendants’ liability for damages based on plaintiff’s claim of common-law negligence, because “[i]n the absence of a statutory basis for recovery, control rather than the unit owners’ common interest is the operative criterion upon which liability is predicated” (Pekelnaya, 25 AD3d at 113).
“It is beyond dispute that landowners and business proprietors have a duty to maintain their properties in reasonably safe condition” {Di Ponzio v Riordan, 89 NY2d 578, 582 [1997]). However, this duty is not limitless. It requires only that the landowner or business proprietor to “maintain its property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to third parties, the potential seriousness of the injury and the burden of avoiding the risk” (Branham v Loews Orpheum Cinemas, Inc., 31 AD3d 319, 322 [1st Dept 2006], affd 8 NY3d 931, 932 [2007]). The duty of a landowner or business proprietor “may extend to controlling the conduct of third persons who frequent or use the property, at least under some circumstances” {Di Ponzio, 89 NY2d at 582-583).
“Liability for a dangerous or defective condition on property is generally predicated upon ownership, occupancy, control or special use of the property . . . Where none is present, a party cannot be held liable for injuries caused by the dangerous or defective condition of the property” {Breland v Bayridge Air Rights, Inc., 65 AD3d 559, 560 [2d Dept 2009]). Thus, an abutting landowner and its management company established their *846 “prima facie entitlement to judgment as a matter of law by demonstrating that they did not have exclusive access to, or the ability to exercise control over, the [sidewalk] grate on which . . . plaintiff allegedly [slipped] and fell” (Hurley v Related Mgt. Co., 74 AD3d 648, 649 [1st Dept 2010]).
Where a building is open to the public, defendants have a “nondelegable duty to provide ... [a] reasonably safe means of ingress and egress, and can be held vicariously liable for any negligence by a third-party defendant that caused the entrance to become unsafe” (LoGiudice v Silverstein Props., Inc., 48 AD3d 286, 287 [1st Dept 2008] [holding that summary judgment was not warranted in favor of building owner and management company, even assuming they did not have notice of a defective mat at the building’s entrance, because issues of fact existed as to whether the mat made the entrance to the building unsafe]). Although this duty “applies with equal force to landowners and tenants who operate places of public assembly” (Branham, 31 AD3d at 322, citing Peralta v Henriquez, 100 NY2d 139, 143-144 [2003]), the duty is simply to provide the public “with reasonably safe means of ingress and egress” (LoGiudice, 48 AD3d at 287), and, as such, may not be invoked unless plaintiff was entering or leaving the premises at the time of injury (see Backiel v Citibank, 299 AD2d 504, 504-508 [2d Dept 2002]; Clark v Beacon Capital Partners, LLC, 2011 NY Slip Op 30920[U] [Sup Ct, NY County 2011]).
The principle quoted above from the Appellate Division, First Department, in Pekelnaya (25 AD3d at 113), that “control . . . is the operative criterion upon which liability is predicated,” is not a new concept in the area of premises liability. “It has been held uniformly that control is the test which measures generally the responsibility in tort of the owner of real property” (Ritto v Goldberg, 27 NY2d 887, 889 [1970]; Butler v Rafferty, 100 NY2d 265, 270 [2003] [noting that “(p)redicating liability on a landowner’s possession and control of the premises is firmly entrenched in our case law”]). Thus, where a condominium’s governing documents place the sole responsibility for the maintenance of the common elements in the control of the board of managers, summary judgment dismissing plaintiff’s claims against two unit owners was found to be proper, where plaintiff slipped and fell on a staircase in a common area (Rothstein v 400 E. 54th St. Co., 51 AD3d 431, 431-432 [1st Dept 2008] [unit owner had no duty to plaintiff for injuries allegedly sustained in a “10-foot-wide plaza área between the entrance to Starbucks *847 and the stairs leading to the sidewalk” as this was considered part of the “common elements” solely under the control of the condominium’s board of managers owner]).
In any case, the “existence and scope of an alleged tortfeasor’s duty is, in the first instance, a legal question for determination by the court” (Di Ponzio, 89 NY2d at 583). However, issues regarding an owner’s or business proprietor’s “control” are generally questions of fact to be determined by the jury (see Kraus v Caliche Realty Estates, 302 AD2d 214, 214 [1st Dept 2003]).
a. Owners Corp.’s Cross Motion for Summary Judgment
Here, contrary to plaintiffs contention, Owners Corp. did not owe a “nondelegable duty to provide a reasonably safe means of ingress and egress” to plaintiff, where there is no allegation that plaintiff was either entering or exiting BBW’s retail store when she allegedly tripped on a defect in the sidewalk (see Backiel, 299 AD2d at 504-508). In contrast, plaintiff testified at her deposition that, at the time of her accident, she was walking from her apartment to a store on Bleecker Street and Broadway to purchase lottery tickets (document 73-7, exhibit P, plaintiffs transcript at 14-15).
Thus, here the operative criterion upon which liability may be predicated is control (Pekelnaya, 25 AD3d at 113). Relying on Pekelnaya and Rothstein, Owners Corp. argues that it has no duty to plaintiff because an individual unit owner of a condominium cannot be held liable for defects in the sidewalks surrounding the property because sidewalks are considered part of the “common elements” subject to the exclusive control of the condominium’s board of managers (document 65, Bailey affirmation If 42). In opposition, LLC argues that there is a triable issue of material fact as to whether Owners Corp. assumed a duty to repair the sidewalks (document 66, Marchick opposing affirmation 1f 7). LLC points to the deposition testimony of O’Sullivan, who was designated by Owners Corp. to testify on its behalf. O’Sullivan testified, among other things, that he was the “building manager” at 250 Mercer Street and employed by “Mercer Square Owners Corp.” (document 34-2, exhibit K, O’Sullivan transcript at 5). He added that during all times relevant to this action, his responsibilities as building manager included walking around the sidewalks surrounding the building to check for any problems (id. at 13-14). Specifically, he testified that it was his responsibility to perform maintenance and any necessary repairs to the sidewalk, specifically the por *848 tion of the sidewalk outside of the BBW store where plaintiff allegedly fell (id.). He claimed that he was the only individual that would have repaired the defective condition described by plaintiff, and, in fact, he repaired the specific defect at issue himself an estimated two or three times (id. at 59). Furthermore, upon being shown a photograph depicting what plaintiff identified as the hole in the sidewalk which caused her to trip and fall, O’Sullivan testified that subsequent to plaintiffs accident, he repaired the particular hole depicted in the photograph (id. at 36-37). Although he could not remember precisely when those repairs were made, he testified the repairs had already been made by the time Owners Corp.’s attorney came to inspect the premises (id. at 40).
Further evidence of O’Sullivan’s actions comes from the deposition testimony of Phyllis Jones, an administrative assistant who has been employed by the Douglas Group to “manag[e] the building” at 250 Mercer Street since approximately 2000 (document 74-2, exhibit U, Jones transcript at 8-9). Jones testified that at the time of plaintiffs accident, O’Sullivan’s responsibilities included maintaining the sidewalk “if there [was a] crack or something” (id. at 16). Also, she testified that O’Sullivan was employed by “the building,” which she clarified as meaning “Mercer Square Owners . . . [t]he owners of the building ... a co-op” (id. at 21). Brenda Ballison, a “managing director” for the Douglas Group in April of 2005, whose duties included overseeing operations at 250 Mercer Street, testified that O’Sullivan was employed by “250 Mercer Street,” but did not know which particular entity (document 74-6, exhibit Y, Ballison transcript at 17). She further stated that O’Sullivan took directions from “the board of directors and Douglas Elliman management” and reported to Phyllis Simmons, an employee of the Douglas Group with an office in 250 Mercer Street (id. at 18). Despite Ballison’s role in overseeing operations, she admitted that she did not know which aspects of the Condominium were “common elements” and had never looked at the portion of the “offering plan for 250 Mercer Street” that addressed the topic (id.).
As further evidence of Owner Corp.’s control over the relevant portion of the sidewalk, plaintiff submits a copy of what appears to be an agreement from August 3, 2007, two years after plaintiffs accident allegedly took place, between Owners Corp., the Condominium, and New York University (NYU) (document 74-4, exhibit W, NYU agreement). LLC is not a party to *849 the agreement nor designated as a third-party beneficiary. The document indicates that NYU intended to construct a new underground cogeneration plant beneath the sidewalk at 251 Mercer Street, located directly across the street from 250 Mercer Street (id. at 1). One of the provisions provides that NYU would “provide funding intended for the cost of repairing or replacing the sidewalk in front of 250 Mercer Street in accordance with the amended Certificate of Appropriateness issued by the Landmarks Preservation Commission” (id. at 2). Also, it provides that during the period of construction, “NYU shall name [Owners Corp.] and the Condominium as additional insured parties on its commercial general liability insurance policy” (id. at 5). Plaintiff argues this agreement is some evidence of Owners Corp.’s control over the sidewalk.
The only evidence that has been offered by any party that conflicts with the above-referenced testimony comes from the documents submitted by Owners Corp. in reply to its instant cross motion for summary judgment, attached exhibits and supporting affidavits (document 87, Bailey reply affirmation 1f 33; exhibit A, W-2). There, Owners Corp. now claims that it learned belatedly that John O’Sullivan gave erroneous testimony in identifying his employer (document 87, Bailey reply affirmation If 30). Relying on copies of documents said to be O’Sullivan’s W-2 forms from 2005 to 2009, Owners Corp. claims that O’Sullivan was employed by the Condominium, not Owners Corp. This new contention is in direct contrast to the arguments made by Owners Corp. in its papers submitted in support of its cross motion for summary judgment, as well as the unequivocal testimony of its deponent, O’Sullivan, and the individuals deposed on behalf of the Douglas Group, which is represented by the same attorney in this action as Owners Corp.
To the extent Owners Corp. seeks to correct its prior deposition testimony, the procedure for making such corrections is provided by CPLR 3116. In general, depositions must be reviewed, corrected, and returned by the deponent within 60 days after it is submitted to him or her. Absent any explanation for its delay in returning corrections within the required 60 days, it is “an improvident exercise of discretion” for a trial court to allow such corrections (Zamir v Hilton Hotels Corp., 304 AD2d 493, 494 [1st Dept 2003]). Notably, O’Sullivan was deposed and the transcript was certified by the reporter on September 14, 2009, but the purported “corrections” were not made until Owners Corp.’s reply affirmation on January 11, *850 2011. Owners Corp.’s explanation for this 16-month delay, that the W-2 forms were discovered because tax season was approaching, does not constitute a “strong showing of justification” (id., quoting Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3116:l, 2003 Pocket Part,; at 167). Therefore, the court need not accept Owners Corp.’s “corrections” in connection with this motion.
Furthermore, Owners Corp. should not be allowed to base its cross motion for summary judgment and opposition to LLC’s motion and BBW’s cross motion, on newly discovered evidence presented for the first time only in its reply affirmation. The “function of a reply affidavit is to address arguments made in opposition to the position taken by the movant and not to permit the movant to introduce new arguments in support of the motion” (Ritt v Lenox Hill Hosp., 182 AD2d 560, 562 [1st Dept 1992]). “Nor does it avail defendant to shift to plaintiff, by way of reply affidavit, the burden to demonstrate a material issue of fact at a time when plaintiff has neither the obligation nor opportunity to respond absent express leave of court” (id., citing CPLR 2214 [c]; Lazar v Nico Indus., 128 AD2d 408, 409-410 [1st Dept 1987]). This matter improperly raised for the first time in Owners Corp.’s reply should therefore be disregarded (McNair v Lee, 24 AD3d 159, 160 [1st Dept 2005]).
In light of the above, the court concludes that Owners Corp. has not established its prima facie entitlement to dismissal as a matter of law because it has not shown an absence of material issues of fact as to the degree of Owners Corp.’s possession and control over the relevant portion of the sidewalk at issue. Accordingly, Owners Corp.’s cross motion is denied to the extent it seeks dismissal of plaintiffs complaint.
Owners Corp.’s cross motion is granted solely to the extent that it seeks dismissal of LLC’s second and seventh cross claims, as there is no evidence of any contract between Owners Corp. and LLC that has been breached. As to the remaining cross claims, Owners Corp.’s cross motion must be denied because no determination has been made as to LLC’s or Owners Corp.’s negligence.
b. The Douglas Group’s Cross Motion for Summary Judgment
Generally, “liability cannot be based upon an allegation that amounts to mere nonfeasance unless plaintiff establishes, as a matter of law, that the managing agent was in complete and exclusive control of the premises” (Vushaj v Insignia Residential Group, Inc., 50 AD3d 393, 394 [1st Dept 2008], quoting *851 Hakim v 65 Eighth Ave., LLC, 42 AD3d 374, 375 [1st Dept 2007]). Subject to a few narrowly construed exceptions, a management company cannot be said to have assumed a duty of care merely by entering a contract to render services (see Espinal v Melville Snow Contrs., 98 NY2d 136, 141 [2002]). One exception is that a “duty of care on the part of the managing agent may arise where there is a comprehensive and exclusive management agreement between the agent and the owner which displaces the owner’s duty to safely maintain the premises” (Roveccio v Ry Mgt. Co., Inc., 29 AD3d 562, 562 [2d Dept 2006], citing Palka v Servicemaster Mgt. Servs. Corp., 83 NY2d 579 [1994]).
Here, the Douglas Group has established its prima facie entitlement to dismissal by providing a copy of the relevant management agreement between Insignia Residential Group, Inc. and Mercer Square Owners Corp. (document 74-5, exhibit X, management agreement). The agreement clearly does not create a comprehensive and exclusive property maintenance obligation intended to entirely displace Owners Corp.’s duties to maintain a reasonably safe premises. The agreement provided that Owners Corp. would retain substantial control over maintenance at the property by, for example, having the right to approve the administrative assistant assigned to the property by the Douglas Group (id. § 1 [b]). Although routine supervision of Owners Corp.’s building service employees would be conducted by the Douglas Group, “any and all decisions as to hiring, firing, disciplinary actions and terms and conditions of employment shall be made by” Owners Corp. and implemented by the Douglas Group (id. § 2 [a]). The agreement provides that ordinary repairs or alterations involving an expenditure in excess of $1,500 require prior approval by Owners Corp. (id. § 2 [b]). These provisions, among others, are inconsistent with any claim that the Douglas Group has entirely displaced Owners Corp.’s obligations to provide a safe premises. Further, the testimony of O’Sullivan and the individuals deposed on behalf of the Douglas Group does not indicate a departure from the terms of the agreement in its actual performance.
In opposition, plaintiff does not meet her burden to demonstrate an existence of a triable issue of fact. No evidence has been provided to support the conclusory statement made in her attorney’s affirmation that a material issue of fact remained as to whether the repairs performed by O’Sullivan, “at the direction and supervision” of the Douglas Group, subjected the Dou *852 glas Group to liability for plaintiffs injuries (document 71, Goldberg opposing affirmation 1i 25). Although the management agreement tasked the Douglas Group with the responsibility of supervising Owners Corp.’s maintenance workers, including O’Sullivan, this supervision does not give rise to a duty of care directly to plaintiff unless the supervision was exclusive and comprehensive.
Contrary to LLC’s contention, summary judgment cannot be defeated based on Jones’s testimony on behalf of the Douglas Group that she walked in front of BBW’s store sometimes on her way to work, because even if this constitutes some evidence that Douglas Group had constructive notice, its absence of exclusive control over maintenance at the property under the management agreement means that it owes no duty to plaintiff. Furthermore, LLC has not offered any evidence that an agreement providing for indemnification existed between LLC and the Douglas Group that would support its cross claim for contractual indemnity. Also, because plaintiffs complaint does not propound any theory that LLC was vicariously liable to plaintiff by reason of the Douglas Group’s own actions, LLC is not entitled to the common-law indemnification it seeks against the Douglas Group (see Esteva v Nash, 55 AD3d 474, 475 [1st Dept 2008]). Accordingly, the Douglas Group’s cross motion for summary judgment is granted and all claims and cross claims as against it are dismissed in their entirety.
c. Associates’ Cross Motion for Summary Judgment •
No opposition has been filed to Associates’ cross motion. Accordingly, Associates’ cross motion for summary judgment is granted and all claims and cross claims against it are dismissed in their entirety.
d. BBW’s Cross Motion for Summary Judgment
BBW has established its prima facie entitlement to dismissal by offering a copy of the lease agreement it entered into with Associates, which remained in effect once ownership of the commercial unit was transferred to LLC (document 73-1, exhibit J, BBW lease). “Administrative Code ... § 7-210 imposes a nondelegable duty on the owner of the abutting premises to maintain and repair the sidewalk, and it [is] undisputed that [BBW] did not create the condition or make special use of the sidewalk” (Collado v Cruz, 81 AD3d 542, 542 [1st Dept 2011] [emphasis added]). The “[provisions of a lease obligating a tenant to repair the sidewalk do not impose on the tenant a duty to a third party, such as plaintiff” (Collado, 81 AD3d at 542). *853 Plaintiff has offered no competent evidence that would support finding BBW owed a direct duty of care to plaintiff. Accordingly, BBW’s cross motion for summary judgment is granted to the extent that plaintiffs complaint is dismissed as against it.
However, although a lease generally cannot be the basis for imposing direct liability of the tenant to a third party, the tenant may be held liable to the owner for damages resulting from the tenant’s breach of provisions included in their lease {Collado, 81 AD3d at 542). Here, the particular provisions in BBW’s standard form lease pertaining to maintenance and repairs of the leased premises were altered by the parties to create exceptions “to the extent the Condominium is required to maintain the sidewalks” (document 73-1, exhibit J, BBW lease at la [7]). Thus, the lease does not impose a contractual duty upon BBW with respect to the relevant portion of the sidewalk at issue in this action. Also, the lease provides that LLC is to indemnify and hold harmless BBW
“against and from . . . (ii) all claims against Tenant arising from any accident, injury or damage whatsoever caused to any person . . . outside of the demised premises but anywhere within or about the Condominium Unit, unless such accident, injury or damage results or is claimed to have resulted from any act, omission or negligence of Tenant” (document 73-1, exhibit J, BBW lease at 44.1 [b]).
There is no competent evidence in the record that the alleged condition of the sidewalk, which is “outside of the demised premises,” can be attributed to BBW’s negligence. Therefore, BBW is not required to indemnify LLC. Accordingly, BBW’s motion for summary judgment dismissing the complaint and all cross claims as against it is granted.
Conclusion
Accordingly, it is ordered that defendant Mercer Square LLC’s motion for summary judgment is denied in its entirety; and it is further ordered that defendant Mercer Square Owners Corp.’s cross motion for summary judgment is granted solely to the extent that defendant Mercer Square LLC’s second and seventh cross claims are dismissed as against Mercer Square Owners Corp. with costs and disbursements to Mercer Square Owners Corp. as taxed by the Clerk upon the submission of an appropriate bill of costs, and the Clerk is directed to enter judgment accordingly, and this cross motion is otherwise denied in its entirety; and it is further ordered that the cross motion of *854 Residential Management Group LLC, Residential Management Group doing business as Douglas Elliman Property Management, Douglas Elliman Property Management, and Insignia Residential Group, Inc., is granted in its entirety and all claims and cross claims as against these entities are dismissed with costs and disbursements as taxed by the Clerk upon the submission of an appropriate bill of costs, and the Clerk of the Court is directed to enter judgment accordingly; and it is further ordered that the cross motion of Mercer Square Associates is granted without opposition and all claims and cross claims as against it are dismissed with costs and disbursements as taxed by the Clerk upon the submission of an appropriate bill of costs, and the Clerk of the Court is directed to enter judgment accordingly; and it is further ordered that the cross motion of Bath & Body Works, LLC is granted and all claims and cross claims as against it are dismissed with costs and disbursements as taxed by the Clerk upon the submission of an appropriate bill of costs, and the Clerk of the Court is directed to enter judgment accordingly; and it is further ordered that the remaining parties are to appear for a compliance conference on September 7, 2011 at 2:15 p.m. as previously scheduled in the May 11, 2011 compliance conference order (document 95) with a complete list of outstanding discovery, if any, in order that a final compliance conference order can be made and the note of issue filed by October 12, 2011 as previously directed.